**WESTERN CONFERENCE RESORTS, INC., an Arizona corporation, and Grassland Resources, Inc., a New Mexico corporation, Plaintiffs-Appellees,**

v.

**Jeffrey M. PEASE and Mitchell B. Moore, Defendants-Appellants.**

**No. 81CA0608.**

Colorado Court of Appeals, Div. I.

April 14, 1983.

Rehearing Denied May 26, 1983.

974

Robert A. Francis, P.C., James R. True, Aspen, for plaintiffs-appellees.

Wagner & Waller, P.C., Richard K. Rufner, Englewood, for defendants-appellants.

STERNBERG, Judge.

Western Conference Resorts, Inc., and Grassland Resources, Inc., (buyers) sued Mitchell B. Moore (seller) and seller's agent, Jeffrey M. Pease, for breach of a conditional purchase agreement seeking to recover the purchase price of an aircraft. The trial court found for the buyers and the seller appeals. We affirm.

The parties entered into a Conditional Purchase Agreement on April 30, 1977, for the sale of an aircraft. The agreement was signed by the seller and by Western Conference Resorts, on behalf of a partnership consisting of the above named buyers. G.A. Keluche was the principal of Western Conference Resorts and David Padwa was the principal of Grassland Resources. The agreement provided that final purchase and acceptance was subject to an inspection by a licensed mechanic to verify that the aircraft was airworthy and that the aircraft had no prior damage.

After taking possession of the aircraft, the buyers learned that the plane had been in an accident of unknown magnitude. Immediately upon obtaining this information on July 21, 1977, several phone calls were made to seller's agent, Pease, during one of which Padwa testified that he said, "I don't think I want this airplane." Buyers testified that they were in contact with Pease for several weeks following their discovery of the damage and were repeatedly assured that "he would make good" and stand behind the sale. Pease denied that there was any further communication.

On September 8, 1977, Keluche mailed a check to Pease for $4,000 and requested that he return or destroy the original check for that amount delivered as partial payment for the aircraft. Keluche testified that this was done because the original check had been drawn on an account containing insufficient funds. The status of the purchase was not mentioned in the letter.

By letter dated September 20 the attorney for Grassland wrote sellers that the aircraft was unacceptable to Grassland "as a partner and the owner of an undivided one-half interest," and that Grassland was tendering "its entire interest" in the aircraft.

Thereafter, buyers filed this suit seeking repayment of maintenance expenses and the purchase price.

The trial court found that the July 21, 1977, phone call was a notice of rejection and that the later dealings between the parties did not waive the rejection. The court awarded buyers their purchase price, and incidental and consequential damages.

On appeal, seller contends that the buyers failed reasonably and timely to notify them of their rejection, arguing that neither the July 21 telephone call nor the September 20 letter were valid rejections. The seller also argues that buyers would have (and therefore should have) been aware of the damage when they took possession but for their

failure to examine the log books, which assertedly would have revealed the prior accident. Seller contends that the inspection by United Beechcraft in late July 1977, following their discovery of the accident, together with the check sent on September 8, constituted acceptance with knowledge of the defect. The seller also claims that the incidental and consequential damages awarded were improper as a matter of law and were not supported by the evidence.

## I.

The parties agree that the prior damage to the aircraft was a failure of a condition expressed in the agreement. The applicable subsections of the Uniform Commercial Code provide that the buyer may reject goods that fail to conform to the contract within a reasonable time after their delivery or tender. Sections 4–2–601(a) and 4–2–602(1), C.R.S.1973. The primary question is whether the buyers gave effective notice of rejection within a reasonable time.

■ What serves as effective notice depends on the nature, purpose, and circumstances of such notice. Section 4–1–204(2), C.R.S.1973; *White v. Mississippi Order Buyers, Inc.,* 648 P.2d 682 (Colo.App.1982). There is no statutorily prescribed form for notice, *Prutch v. Ford Motor Co.,* 618 P.2d 657 (Colo.1980), it being sufficient if it gives the seller an opportunity to correct the defect and prepare for negotiations and litigation, and if it protects the seller against claims asserted after it is too late to investigate. *White v. Mississippi Order, supra.* The notice must let the seller know that the transaction is troublesome to the buyer. *Prutch v. Ford Motor, supra.*

■ Whether the notice given is satisfactory, is a question of fact, the trial court's conclusion thereon being binding on appeal if supported by the evidence in the record. *White v. Mississippi Order, supra; Hoffman's Double Bar Pine Nursery v. Fyke,* 633 P.2d 516 (Colo.App.1981). The evidence here indicates that the parties were in communication, that the seller knew the buyers were dissatisfied, and that they did not wish to take any further action

until they had more information. This supports the trial court's conclusion that the buyers rejected the aircraft on July 21.

■ The seller argues that notwithstanding the communication between the parties immediately following discovery of the damage, because buyers should have discovered the defect in June the alleged notice of rejection was not timely. We disagree.

The agreement provided for an inspection for prior damage by a licensed mechanic of buyers' choosing. Even if buyers could have discovered the fact of the accident by examining the log books, the trial court found that lack of inspection was reasonable because neither partner was a mechanic and they intended to rely on a licensed mechanic. When the buyers took possession the parties agreed to postpone the final inspection until August; thus, under the circumstances, the delay between delivery and rejection was reasonable.

## II.

The seller points to events which followed buyers' rejection as evidence that the parties did not intend their prior conduct to act as a rejection. None of these acts operated as an acceptance as described by § 4–2–606, C.R.S.1973, and thus, those actions are not sufficient to overcome the evidence and finding that buyers intended to reject the aircraft.

■ Acceptance of goods occurs when the buyer signifies to the seller that he will retain the goods, fails to make an effective rejection, or does any act inconsistent with the seller's ownership. Section 4–2–606, C.R.S.1973; *O'Shea v. Hatch,* 97 N.M. 409, 640 P.2d 515 (1982). Keluche testified that the check mailed on September 8 was intended as a substitute for a check drawn on an account with insufficient funds, and the trial court so found.

The buyers testified that the service work, insurance fees, and tie-down charges incurred by buyers after the July 21 rejection were necessary to preserve the aircraft in an airworthy condition so that it could be

resold, and the trial court so found as well. The evidence also indicated that subsequent to discovering the prior damage buyers did not use the aircraft in their business. None of this evidence shows acts inconsistent with seller's ownership and, because a buyer has a security interest in goods on rightful rejection for payments and expenses, buyer's failure to tender the aircraft does not indicate acceptance. Section 4–2–711(3), C.R.S.1973; *Irrigation Motor & Pump Co. v. Belcher*, 29 Colo.App. 343, 483 P.2d 980 (1971).

Seller also points to the letter of September 20 as evidence that there had as yet been no rejection in the minds of the buyers and further contend that this letter was ineffective to operate as a rejection on behalf of the partnership. However, because we agree with the trial court that there was an earlier rejection, any problematic language in the letter is without significance.

The trial court found that all of the conduct of buyers after their rejection on July 21 was part of an effort to determine whether to waive the non-conformity, and did not act as a withdrawal of their rejection. These findings, being supported by the evidence, are binding on appeal.

### III.

The seller argues that certain items of damages awarded by the trial court were not supported by the evidence and were not reasonably incurred. We disagree.

A buyer may recover incidental and consequential damages where the buyer is in possession of goods and has given notice of rejection. Section 4–2–714, C.R.S.1973. Incidental damage may include expenses reasonably incurred in inspection, receipt, transportation, and care and custody of goods rightfully rejected. Section 4–2–715, C.R.S.1973; *Deaton, Inc. v. Aeroglide Corp.*, 99 N.M. 253, 657 P.2d 109 (1982).

Buyers' testimony indicated that the items included in their request for damages were necessary maintenance so that the aircraft could be ferried to Denver for resale, and to maintain its airworthiness so that prospective buyers could be taken on demonstration flights. Invoices and cancelled checks were produced to verify payment of the charges.

 The law permits approximation of the amount of damages provided the fact of damages is certain. *Eccher v. Small Business Administration*, 643 F.2d 1388 (10th Cir.1981). The evidence was sufficient to justify the inference that the expenditures incurred were reasonable and in fact paid. Therefore, we are not at liberty to disturb the amount awarded. *See Eccher v. S.B.A., supra.*

The judgment is affirmed.

ENOCH, C.J., and VAN CISE, J., concur.