**John PHILLIPS, Plaintiff-Appellee,**

v.

**MONARCH RECREATION CORPORATION, a Nebraska corporation, Defendant-Appellant.**

**No. 81CA0731.**

Colorado Court of Appeals, Div. I.

May 12, 1983.

Rehearing Denied June 2, 1983.

---

* Retired Court of Appeals Judge Sitting by Assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1982 Cum.Supp.).

Williams, Trine, Greenstein & Griffith, P.C., Bruce O. Downsbrough, William A. Trine, Boulder, for plaintiff-appellee.

Wood, Ris & Hames, P.C., Eugene S. Hames, Denver, for defendant-appellant.

STERNBERG, Judge.

John Phillips sued the Monarch Recreation Corporation for injuries and damages he sustained when he collided with trail grooming equipment at Monarch's ski area. The jury returned a verdict for Phillips and Monarch appeals. We affirm.

After skiing down a run at Monarch known as Ray's Romp, Phillips collided with a trail grooming machine called a sno-cat as he came around a blind corner at the bottom of the run. He testified that he was unable to see the sno-cat until several seconds before the collision and that he attempted to tighten his turn when he saw it but was unable to do so in such a short period of time.

The sno-cat is similar in appearance to a very large tractor and has snow grooming equipment extending fifteen feet behind it. On the day of the accident it was being used to groom a run known as Ajax. Because Ajax was too steep to drive back up, the driver of the sno-cat was using a trail called the Catwalk (the one Phillips attempted to turn on to) to get back up to the top of Ajax. The Catwalk is a narrow, flat trail that connects several runs and is used by skiers to continue from run to run down the mountain to the ski lifts. There were no signs posted to warn skiers that the sno-cat was on the trail.

Phillips testified that he was skiing slowly on Ray's Romp, making wide sweeping turns, and estimated his speed at between 20 and 30 miles per hour. Although there were no eyewitnesses to the accident, a ski patrolman named Morehead, who was skiing down a run separated from Ray's Romp by some trees, testified that he saw Phillips at the bottom of Ray's Romp where the two runs converge, and that Phillips was skiing in a tuck position at a high rate of speed. Several other witnesses who were familiar with Phillips' skiing style testified that he tended to ski beyond his ability and was not always in control. In the opinion of the treating physician, Phillips' injuries were consistent with a speed of 5 to 10 m.p.h.

Evidence was introduced of Phillips' medical expenses and of permanent injury to his knees, as well as evidence of his need for continual medical attention as a result of the injuries.

A number of jury instructions were given relating to sections of the Ski Safety Act of 1979, § 33–44–101 et seq., C.R.S.1973 (1982 Cum.Supp.). These included an instruction that violation of any requirement of the act which causes injury to any person constitutes negligence by virtue of § 33–44–104, C.R.S.1973 (1982 Cum.Supp.); an instruction that whenever maintenance equipment is being employed to maintain or groom any ski slope or trail while such trail is open to the public, a conspicuous notice to that effect shall be placed at or near the top of that slope or trail, § 33–44–108, C.R.S.1973 (1982 Cum.Supp.); and one that each skier has the responsibility for knowing the range of his ability, maintaining control, avoiding collision with persons and objects below him, and staying clear of snow grooming equipment and other equipment

on the slopes or trails, § 33–44–109, C.R.S. 1973 (1982 Cum.Supp.).

Also included was an instruction on the sudden emergency doctrine. Based on *C.J.I.* 9:10 (2d ed. 1980), it stated that "a person who, through no fault of his own, is placed in a sudden emergency, is not chargeable with negligence if he exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances."

The jury was given three verdict forms. The trial court instructed it to complete the first form if it found either that Phillips did not sustain injuries or the absence of causative negligence on the part of Monarch. If it found affirmatively on those issues, the jury was instructed to determine whether Phillips was negligent and whether his negligence contributed to his injury. If the answer to either of those questions was in the negative, *i.e.*, that Phillips' injuries were solely attributable to Monarch's negligence, the court instructed the jury to complete the second form, which was a verdict for Phillips and an amount of damages. If the answer to all the questions was in the affirmative, *i.e.*, that Monarch was negligent but that Phillips' negligence also contributed to his injuries, the jury was to complete the last form, stating the total amount of damages and apportioning the negligence between the parties as a percentage of 100.

The jury completed the second form, finding Monarch responsible for Phillips' injuries, and finding that Phillips was negligent but that his negligence did not contribute to his injuries. Contrary to the court's instructions, the jury placed a 95% figure next to its finding of Monarch's negligence, and a 5% figure next to its finding of Phillips' negligence.

Five months after the trial, Monarch submitted a motion for a new trial based on newly discovered evidence with the affidavits of two persons who were skiing down Ray's Romp while Phillips was on that run. In the affidavits, the affiants indicate that Phillips skied past them when they were about two-thirds of the way down the run

and that he was skiing straight down the hill at a high rate of speed. They did not see the accident. The trial court denied the motion for a new trial because it considered the evidence to be merely cumulative to testimony already given.

## I.

Monarch argues that the jury should not have been instructed on the statutory duty to post warning signs when snow grooming equipment is in use because the sno-cat was not grooming when the accident occurred. We disagree.

■ The threshold determination of admissibility of a statute is one of relevancy. *Sego v. Mains,* 41 Colo.App. 1, 578 P.2d 1069 (1978). When the General Assembly has expressly designated the violation of a statute to be negligence, the statute is relevant if: (1) there is evidence that the alleged violation was the proximate cause of the injury, *Lambotte v. Payton,* 147 Colo. 207, 363 P.2d 167 (1961); (2) the party injured is a member of the class of persons to be protected by the statute, *Hamilton v. Gravinsky,* 28 Colo.App. 408, 474 P.2d 185 (1970); and (3) the statute can be construed to apply to the facts at issue. *Restatement (Second) of Torts* § 285 (1976).

On its face the Ski Safety Act reveals that its purpose is to require warnings to skiers that their path may be obstructed by heavy machinery. The sno-cat involved carried the same equipment and was being operated in the same manner as if it were grooming the Catwalk. The hazard of colliding with equipment on a blind corner was the same whether or not the sno-cat was grooming. Indeed, the sno-cat would have been "grooming" had the Catwalk not been groomed earlier that morning.

■ The rule of strict construction is relaxed in the interpretation of an act designed to declare and enforce a principle of public policy. *Rinnander v. Denver Milk Producers, Inc.,* 114 Colo. 506, 166 P.2d 984 (1946). Although the act only requires a sign when equipment is "grooming and maintaining" a ski slope, we hold that a

warning sign must also be posted when a sno-cat is present on the ski slopes for those purposes but is not actively "grooming" in that particular location.

## II.

Because Phillips did not show that he would have pursued a different course of conduct had the sudden emergency left him time to reflect, Monarch argues that it was error to instruct the jury on the sudden emergency doctrine.

■ It is error to give an instruction when it is not supported by the evidence. *Converse v. Zinke,* 635 P.2d 882 (Colo.1981). Early case law indicates that when a party's theory is that there was no time to reflect and no choice of conduct involved, a sudden emergency instruction should not be given. *Iacino v. Brown,* 121 Colo. 450, 217 P.2d 266 (1950). But more recent cases indicate that the question whether there is a choice involved or time to reflect is a jury issue and that the instruction is merely an evidentiary guide by which the trier of fact may apply the prudent man rule. *Davis v. Cline,* 177 Colo. 204, 493 P.2d 362 (1972); *Cudney v. Moore,* 163 Colo. 30, 428 P.2d 81 (1967).

■ Here, because of the finding that Phillips was negligent, the jury either found the instruction not to be applicable to the facts, or it applied the instruction and found that Phillips was negligent. Thus, giving the instruction was not reversible error. *See Chart v. General Motors Corp.,* 80 Wis.2d 91, 258 N.W.2d 680 (1977); *Meyer v. Johnson,* 254 N.W.2d 107 (S.D.1977); *Schiro v. Raymond,* 237 Minn. 271, 54 N.W.2d 329 (1952).

## III.

Monarch also argues that the five percent figure for Phillips' negligence is inconsistent with the jury's finding that his negligence did not contribute to his injuries. Monarch reasons that by inserting the 5% figure on the verdict form demonstrates that the jury disregarded the court's instructions.

■ Even if we assume, *arguendo,* the correctness of Monarch's position, reversal is not mandated. The policy in this state with regard to inconsistency in a verdict is to resolve it based upon the instructions given if it is possible to do so without violating the expressed intent of the jury. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1982). And, if it is possible to resolve an inconsistency in keeping with the jury's intent, then any change in the verdict by the trial court is deemed a change in form rather than a change in substance. *Weeks v. Churchill,* 44 Colo.App. 520, 615 P.2d 74 (1980).

■ Here, the jury was given detailed instructions on which of the several verdict forms to complete depending on its findings. In view of the physician's testimony that such injuries could have been sustained at lesser speeds, and Monarch's failure to show that it was possible to avoid the sno-cat at a lesser speed, the record supports the finding that Phillips' negligence did not cause his injuries. Accordingly, we are bound to presume that the jury followed the instruction of the court. *Lindauer v. LDB Drainlaying,* 38 Colo.App. 266, 555 P.2d 197 (1976). And, if it appears that the jury intended to render a verdict for one party, the irregularity in form will be disregarded. *See Boynton v. Fox Denver Theaters, Inc.,* 121 Colo. 227, 214 P.2d 793 (1950). Hence, we must presume the jury intended to complete the verdict form under which damages would not be reduced in proportion to the parties' respective degree of negligence and, therefore, we disregard the additional markings.

## IV.

With regard to the trial court's decision to deny Monarch's motion for a new trial based on newly discovered evidence, we find no abuse of discretion.

■ Such a motion may be granted if there is newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at trial. C.R.C.P. 59(a)(4); *American National Bank v. Chris-*

*tensen,* 28 Colo.App. 501, 476 P.2d 281 (1970). Case law has expanded those enumerated requirements to include a requirement that the evidence would probably change the result. *American National Bank v. Christensen, supra.* Conflicting evidence at trial, and the discovery of new evidence that would only corroborate the evidence given, or contradict or impeach it, does not warrant the grant of a new trial unless it appears there would be a different result. *Warshauer Sheep & Wool Co. v. Rio Grande State Bank,* 81 Colo. 463, 256 P. 21 (1927). Thus, if the evidence is merely corroborative or cumulative, a motion for a new trial should be denied. *Hudson v. American Founders Life Insurance Co.,* 151 Colo. 54, 377 P.2d 391 (1962).

There were no eyewitnesses to the accident. Ski patrolman Morehead saw Phillips seconds before the collision and testified that he observed Phillips in a tuck position traveling fast. Phillips contradicted this testimony. Monarch introduced additional testimony tending to bolster Morehead's evidence. The newly discovered evidence would have only served to corroborate Monarch's evidence. And, significantly, the affiants observed Phillips at an earlier time than did Morehead, so their testimony would have been less probative of Phillips' speed at the time he observed the sno-cat. Thus, it cannot be said the evidence would have changed the result.

The decision to grant a new trial for newly discovered evidence is within the sound discretion of the trial court and will not be reversed in the absence of an abuse of discretion. *Meyer v. Schwartz,* 638 P.2d 821 (Colo.App.1981). We find no abuse of discretion and will not disturb the trial court's ruling.

## V.

As additional grounds for reversal Monarch argues that it was error to exclude language on the back of Phillips' lift ticket by which a skier was purported to have agreed that he understood and assumed the risk of skiing, and that the evidence did not support an instruction on future medical expenses and lost earning capacity. We find no error.

Statutory provisions may not be modified by private agreement if doing so would violate the public policy expressed in the statute. *In Re Marriage of Johnson,* 42 Colo.App. 198, 591 P.2d 1043 (1979). The statutes at issue here allocate the parties' respective duties with regard to the safety of those around them, and the trial court correctly excluded a purported agreement intended to alter those duties.

On the question of damages, the law permits approximation of the amount of damages provided the fact of damages is certain, *Western Conference Resorts, Inc. v. Pease,* 668 P.2d 973 (Colo.App.1983), and provided the plaintiff introduces some evidence which is sufficient to allow a reasonable estimate of damages. *Great West Food Packers, Inc. v. Longmont Foods Co.,* 636 P.2d 1331 (Colo.App.1981). And, if there is evidence of permanent disability, a court may instruct the jury on impairment of future earning capacity. *Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544 (1977).

Phillips' medical bills were evidence upon which to make a reasonable estimate of his future expenses, and his physician's testimony on the likelihood of his developing arthritis and having impaired mobility supports an instruction on damages based on loss of future earning capacity. Thus, the instruction was proper.

The judgment is affirmed.

BERMAN and COYTE,* JJ., concur.

* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1981 Cum.Supp.).