**Susan McLEAN and Kenneth McLean, Plaintiffs-Appellants,**

v.

**WINTER PARK RECREATIONAL ASSOCIATION, Defendant-Appellee.**

**No. 86CA1289.**

Colorado Court of Appeals, Div. IV.

July 7, 1988.

Rehearing Denied Sept. 8, 1988.

Treece, Bahr & Arckey, James L. Treece, Littleton, for plaintiffs-appellants.

White and Steele, P.C., Stephen K. Gerdes, Peter W. Rietz, Denver, for defendant-appellee.

CRISWELL, Judge.

Plaintiffs, Susan and Kenneth McLean, appeal the trial court's summary judgment entered against them because they failed to file their complaint against defendant, Winter Park Recreational Association (Winter Park), within the three-year period of limitations contained within the Ski Safety Act of 1979, § 33-44-101, et seq., C.R.S. (1984 Repl.Vol. 14) (the Act). We reverse.

On June 30, 1986, plaintiffs filed their complaint against Winter Park, alleging that on February 23, 1983, while they were in a parking lot owned by Winter Park waiting for a shuttle bus operated by it, a sign affixed to a concrete block that was owned, maintained, and positioned by Winter Park fell on one of the plaintiffs, causing her serious personal injuries. Winter Park's answer to their complaint admitted that it was the "operator" of the parking lot, but generally denied the remaining allegations of the complaint. In addition, its answer affirmatively asserted that plaintiffs' claims were barred by the provisions of the Act.

Shortly thereafter, Winter Park filed a motion, requesting the entry of a judgment

of dismissal, based upon the applicability of § 33–44–111, C.R.S. (1984 Repl.Vol. 14). This statute establishes a three-year period of limitations for actions against a "ski area operator" to recover damages for injuries arising out of the "maintenance, supervision, or operation of ... *a ski area*" (emphasis supplied).

A "ski area" consists of "ski slopes or trails and *other places* under the control of a ski area operator and administered as a single enterprise." Section 33–44–103(6), C.R.S. (1984 Repl.Vol. 14) (emphasis supplied). Thus, the question before the trial court, and before us, is whether the parking lot in which the plaintiffs were waiting was an "other place" under this statute and, therefore, a part of a "ski area," as contemplated by the Act.

In entering judgment for Winter Park as requested in its motion, the trial court held that the parking lot involved was one of the "other places" referred to by the Act. Thus, it concluded that the three-year statute of limitations in § 33–44–111 applied to plaintiffs' action.

Plaintiffs argue, however, that the term "other places" refers only to places used in conjunction with the skiing activity itself, such as the woods between ski slopes, and does not refer to other areas, such as shops, restaurants, and parking lots, not directly devoted to skiing activities. Thus, they assert that it was the general six-year statute of limitations that was then applicable to negligence actions, § 13–80–110, C.R.S., 1973, and not § 33–44–111, C.R.S. (1984 Repl.Vol. 14), that governed this action. We agree.

The Act was adopted in 1979 in order to establish "*safety standards* for the operation of *ski areas* and for the skiers using them" and to define the legal responsibilities of both ski area operators and skiers using "ski areas." Section 33–44–102, C.R. S. (1984 Repl.Vol. 14) (emphasis supplied). A "ski area operator" is an entity that owns, manages, or directs the operation of a passenger tramway under § 25–5–701, et seq., C.R.S. (1982 Repl.Vol. 11) and that has "operational responsibility for any ski areas." Section 33–44–103(7), C.R.S. (1984 Repl.Vol. 14).

To accomplish these purposes, the Act contains comprehensive requirements applicable to ski area operators. These provisions require the operator to post signs near the "loading point" of each passenger tramway, and in its interior, as well as at various locations on or near chair lifts and surface lifts to provide information and directions to passengers. Section 33–44–106, C.R.S. (1984 Repl.Vol. 14). In addition, the operator must install and maintain a sign near the "uphill loading point of each base area lift" to indicate the relative difficulty of each trail and slope maintained by the operator.

Likewise, signs must be erected and maintained to indicate "danger areas" and "closed trails or slopes." Signs are also required to mark man-made structures on slopes or trails, such as hydrants and water pipes. Section 33–44–107, C.R.S. (1984 Repl.Vol. 14). Further signs are required to be placed on motorized equipment moving "on or in the vicinity of a ski slope or trail" and at or near the top of the slope or trail when such equipment is maintaining or grooming the same. Section 33–44–108, C.R.S. (1984 Repl.Vol. 14).

Finally, except in "heavily wooded areas or other nonskiable terrain," an operator must "mark its *ski area* boundaries" in a manner that skiers may see. Property adjacent to a "ski area" that is closed to skiing must also be marked. When closed slopes and trails and adjacent property are marked as required, the operator has "no duty arising out of its status as a ski area operator to any skier skiing beyond the *area* boundaries." Sections 33–44–107 and 33–44–108 (emphasis added).

The Act regulates the activities of a "passenger" aboard a passenger tramway or other lift. Section 33–44–105, C.R.S. (1984 Repl.Vol. 14). It also regulates the activity of a skier, when skiing, by requiring the skier to ski within his or her ability, to maintain a proper lookout, to stay clear of vehicles and other equipment on the slopes, to heed all posted information, to use only proper equipment, and not to ski

on closed trails or slopes or on adjoining lands not open to skiing. The violation of certain of these regulations constitutes a class 2 petty offense. Section 33–44–109, C.R.S. (1984 Repl.Vol. 14).

Significant to the Act's purpose of promulgating "safety standards" for "ski areas," its substantive provisions regulate the activities of the operator and the skier *only* to the extent that those activities are directly related to the safety of the skier, while skiing, or while in an area, such as a "base lift area," or on a tramway or other lift, which is used to engage in that activity. It does not purport to regulate either the conditions under which an operator must maintain its other facilities (such as restaurants, shops, and parking lots), or the activities of persons making use of such facilities. Considering the purpose of the Act and the nature of the activities governed by it, therefore, we conclude that the term "ski area" was not intended to encompass any area in which neither the operator's nor the skier's activities are regulated.

Further, the specific injunction that the operator mark its "ski area boundaries" in a manner "readily visible to skiers," § 33–44–107(6), C.R.S. (1984 Repl.Vol. 14), also belies any contention that the General Assembly intended that the term "other places" include all areas, including buildings, owned by the operator. The purpose of this provision is to allow a skier to be aware of the "area boundaries," so that he does not ski beyond them. Section 33–44–108, C.R.S. (1984 Repl.Vol. 14). Yet, this requirement becomes virtually purposeless and impossible to implement, if a "ski area" includes such facilities as restaurants, shops, or parking lots, many of which are far removed from the slopes and trails where skiers ski.

On the other hand, there are "other places," in addition to slopes, trails, passenger tramways, and lifts, where the parties' activities are regulated. The "base lift area" is one, § 33–44–107(2), C.R.S. (1984 Repl.Vol. 14); areas designated for embarking upon or disembarking from a tramway or lift are also such places,

§ 33–44–106, C.R.S. (1984 Repl.Vol. 14); and the track of T-bar and other surface lifts are yet others, § 33–44–105(2)(e), C.R.S. (1984 Repl.Vol. 14). In addition, there are additional areas between slopes and trails, normally wooded, that are not properly a part of any slope or trail. *See* § 33–44–103(9), C.R.S. (1984 Repl.Vol. 14). All of these areas are, nevertheless, areas where the Act regulates the operator's or the skier's activities.

The Act must be construed with a due regard for its underlying purposes. Since it is an enactment designed to declare principles of public policy, it need not be strictly or literally interpreted. *See Phillips v. Monarch Recreation Corp.*, 668 P.2d 982 (Colo.App.1983).

While it is unnecessary to determine the precise boundaries of Winter Park's "ski area" in this case, we conclude that the area here at issue, which is devoted to the parking of motor vehicles and the operation of shuttle buses, is not an area that is included within the statutory definition of that term. Thus, none of the provisions of the Act, including the statute of limitations contained in § 33–44–111, is applicable to this controversy, and the trial court erred in concluding otherwise.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with the views contained herein.

KELLY, C.J., concurs.

BABCOCK, J., specially concurs.

BABCOCK, Judge, specially concurring.

I write separately because, although I agree that summary judgment was improperly granted on this record, I disagree with the majority's interpretation of the statute.

The question is whether there is any genuine issue of material fact that the parking lot where plaintiff was injured was a "ski area" as defined by § 33–44–103(6), C.R.S. (1984 Repl.Vol. 14). That section states:

"'Ski area' means all ski slopes or trails *and other places* under the control of a

ski area operator and *administered as a single enterprise* within this state." (emphasis added)

This language is plain, clear and unambiguous. As such our role is to apply the plain and ordinary meaning of its words and phrases as written. *See Sargent School District No. RE–33J v. Western Services, Inc.,* 751 P.2d 56 (Colo.1988); *S.W. Devanney & Co. Inc. v. Griffin,* 757 P.2d 1088 (Colo.App.1988).

Application of this fundamental principle here leads me to conclude that the parking lot is an "other place." It was undisputedly managed and controlled by Winter Park, a ski area operator. The only remaining material issue of fact is whether Winter Park "administered" this "other place" as a "single enterprise."

Because the limited record shows that this material issue of fact remains to be determined, I concur in the majority's result, but not in its strained construction of the statute.