**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 25 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROCKY MOUNTAIN
MICROSYSTEMS, INC. a Colorado
corporation,

Plaintiff-Appellee,

v.

PUBLIC SAFETY SYSTEMS,
INCORPORATED, a Virginia
corporation,

Defendant-Appellant.

No. 98-1059
(D.C. No. 95-WM-726)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **BALDOCK**, and **HENRY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Public Safety Systems, Inc. (PSSI) appeals from an adverse judgment entered after a bench trial on plaintiff Rocky Mountain Microsystems, Inc.'s (RMMI's) claims for breach of contract and quantum meruit. Pursuant to contractual stipulation, Colorado law controls in this diversity action. See Appellant's Appendix (App.) at 270. We review the district court's legal conclusions de novo and its factual findings for clear error, see Salve Regina College v. Russell, 499 U.S. 225, 231, 233 (1991), and affirm for substantially the reasons stated in its opinion, see generally Rocky Mountain Microsystems, Inc. v. Public Safety Sys., Inc., 989 F. Supp. 1352 (D. Colo. 1998).

The district court's extensive discussion of the evidence need not be repeated in full here. Some discussions of the facts are necessary to understand the outcome. PSSI contracted to provide the City and County of Denver with an integrated computer-aided dispatching ("CAD") system for the city's fire, police, and emergency medical service departments. PSSI then subcontracted with RMMI, which agreed to design and install combined hardware-and-software devices, called "Interface Modules," to connect the city's existing dispatching equipment with the CAD system PSSI was to provide. The PSSI-RMMI agreement set out a payment schedule tied to three performance "milestones."

-2-

The first, consisting of twenty-five percent of the contract price due (and paid) upon execution of the contract, is not in dispute. This case involves RMMI's effort to obtain payment for the second and third milestones, regarding delivery/installation and demonstration/acceptance of the Interface Modules. PSSI, whose contract with the city was definitively terminated after RMMI had invoiced the last two milestones, defended against the suit on the basis that RMMI had not satisfied certain conditions precedent to payment.

**Delivery/Installation**

Section 3.3 of the parties' contract states that RMMI "shall deliver the Hardware [and associated software] to PSSI and install the Hardware at the Facilities." App. at 259; see also id. at 260. "Facilities" is elsewhere specified to be the Combined Communications Center for the city's fire, police, and emergency medical services. See id. at 258, 281. The second milestone payment, consisting of fifty percent of the contract total, was due "[u]pon completion of the installation." Id. at 280.

PSSI contends RMMI failed to comply with a contractual duty to deliver the Hardware to PSSI independently of the delivery and installation at the Center. The district court rejected PSSI's dual-delivery position, reading the quoted provision of section 3.3 instead to contemplate a single delivery and installation

at the Center in Denver, where PSSI's CAD system was located.    See Rocky

Mountain Microsystems, Inc.   , 989 F. Supp. at 1356-57.  We agree.

In addition to the points made by the district court, we note that PSSI is

located in Maryland, and no reasonable construction of the parties' contract

would require a redundant delivery thousands of miles from the actual installation

site without fairly clear language to that effect including, for example, some

indication of the location intended for such delivery.  The only site specified in

the contract, however, is the Center in Denver.  Indeed, that location is repeated

without qualification in the warranty section of the contract as well.    See App. at

265 (Section 9.1 of the contract stating RMMI's warranty of "the Hardware, at the

time of delivery to the Facilities").

In addition to its objections regarding delivery,    [1] PSSI contends RMMI did

not complete installation of the Interface Modules, which was necessary to

consummate its duty with respect to the second milestone.  PSSI argues, as a

general matter, that the Interface Modules were not fully installed and functioning

---

[1]    Our agreement with the district court over the import of the contract's delivery provision obviates some collateral points argued by PSSI.  For example, PSSI's contention that it had not formally authorized anyone at the Center to receive delivery from RMMI merely reflects an omission on PSSI's part, not any noncompliance by RMMI, which fulfilled its contractual duty when it completed delivery to the specified destination and notified PSSI of that fact by invoice.    See also Colo. Rev. Stat. § 4-2-503.  And, as PSSI itself states, the "title" issue discussed in its brief is immaterial.    See Colo. Rev. Stat. § 4-2-401.

when further work was curtailed by the breakdown of PSSI's relationship with the city and, more specifically, that the Interface Modules were never connected to PSSI's CAD system, the last step necessary for complete installation.

With respect to installation generally, the district court found from conflicting evidence that RMMI had completed its work connecting the Interface Modules to the city's equipment at the Center: "Everything was installed except for the connection to [PSSI's CAD] computer." Rocky Mountain Microsystems, Inc., 989 F. Supp. at 1355. The record is sufficient to support this factual determination. As for connection to PSSI's CAD system, the undisputed evidence showed this step "could only be accomplished by [PSSI]," id., because PSSI had expressly prohibited RMMI and city personnel from touching the CAD system. We agree with the district court that PSSI "should not be allowed to frustrate any of [RMMI's] remaining performance by [its] own inaction." Id. at 1357 (citing Comment 3 to Colo. Rev. Stat. § 4-2-311(3), which provides that "when . . . cooperation by one party is necessary to or materially affects the other party's performance, but it is not seasonally forthcoming; th[is] subsection relieves the other party from the necessity for performance or excuses his delay in performance as the case may be"); see also I.M.A., Inc. v Rocky Mountain Airways, Inc. , 713 P.2d 882, 889 (Colo. 1986) (applying same general rule of contract law, without relying on § 4-2-311).

PSSI's brief also includes a passing, conclusory objection that RMMI did not deposit the source code for the Interface Modules' software into escrow, as required by section 3.5 of the contract. We do not consider this pertinent to the issue at hand. The source code was to be deposited in escrow " *[u]pon completion* of the installation," App. at 260 (emphasis added), not as *part of* the installation, and, in any event, the undisputed evidence showed that the purpose of this provision was to protect the city--not PSSI--should RMMI cease to be available for maintenance of the Interface Modules at some future date. Id. at 518-19, 557-59. Any suggestion that this obligation of RMMI was a "dominant purpose" of its contract with PSSI, and thus a condition precedent to a milestone payment,[2] is meritless. Johnson v. Benson, 725 P.2d 21, 24 (Colo. App. 1986). See generally Rohauer v. Little, 736 P.2d 403, 409 (Colo. 1987) (unless language "unequivocally" indicates otherwise, construction of provision as promise rather than condition preferred).

In sum, RMMI completed delivery and installation in accordance with its legal and contractual duties. Accordingly, we affirm the district court's award of the second milestone payment.

---

[2] PSSI invokes the source code provision as a condition precedent, and hence a complete defense, to payment of the second milestone; it has not argued for any set-off or damages for breach. Indeed, there is no evidence that RMMI's nonperformance of this covenant--after the beneficiary city prohibited further efforts to complete the terminated PSSI contract--caused PSSI any injury.

## Demonstration/Acceptance

Acceptance, the third and last milestone, is governed by section 4 of the contract, which sets up a three-step scheme. First, RMMI "shall demonstrate to PSSI, or its designated representative, the functions of [the Interface Modules];" second, "following successful demonstration . . . PSSI shall, for a period of thirty days, conduct acceptance testing;" and third, "PSSI shall advise [RMMI] of any detected deficiencies" but "[i]f no such deficiencies are reported during said thirty day period, the Interface Module[s] shall be deemed accepted." App. at 260.

The district court found that RMMI demonstrated the Interface Modules "to the satisfaction of City representatives," but also that they "were not designated representatives of [PSSI] pursuant to the contract." Rocky Mountain Microsystems, Inc., 989 F. Supp. at 1357. However, the court concluded these facts were ultimately nondispositive because, in any event, after receiving RMMI's invoices for the second and third milestones, PSSI not only did not reject the Interface Modules but "acted as if it had fully accepted [RMMI's] performance by billing Denver for the two milestones . . . and then, following termination [of its contract with the city], demanding payment from Denver for those milestones as 'work completed.'" Id. Thus, the court concluded, "[PSSI's] conduct following installation constituted acceptance of the goods under

-7-

[Colorado's version of the Uniform Commercial Code (UCC)] because it failed to timely reject the goods . . . and acted inconsistent with [RMMI's] continued ownership." Id. (citing Colo. Rev. Stat. § 4-2-606).

We agree with the district court's UCC analysis. Section 4-2-606(1)(c) provides that "[a]cceptance of goods occurs when the buyer . . . [d]oes any act inconsistent with the seller's ownership." The case law reflects a straightforward implementation of this acceptance-by-conduct principle. See, e.g. , Lockhart v. Elm, 736 P.2d 429, 430-31 (Colo. Ct. App. 1987); Western Conference Resorts, Inc. v. Pease , 668 P.2d 973, 976-77 (Colo. Ct. App. 1983); Surplus Elecs. Corp. v. Gallin , 653 P.2d 752, 753 (Colo. Ct. App. 1982). The issue is one of fact, and "[t]he resale of goods by a buyer is generally an act inconsistent with the seller's ownership and, thus, is an important factor in determining whether acceptance occurred." Lockhart , 736 P.2d at 431. Here, the district court relied on PSSI's efforts to effectively resell the Interface Modules to the city--long after delivery, installation, and invoicing by RMMI without rejection by PSSI [3]--as grounds for

---

[3] PSSI points out that it eventually responded to RMMI's invoice by noting that the "projects are currently in abeyance due to contractual differences [with] the City," and that "PSSI has submitted a proposal to the city on which we are waiting to hear back." App. at 353. Nowhere, though, did PSSI disapprove, or even suggest any deficiency in, RMMI's tendered products or performance. We cannot say the district court erred in finding no rejection under the circumstances.

finding acceptance under § 4-2-606. That factual determination was not clearly erroneous.

PSSI argues that it was improper for the district court to apply § 4-2-606 when the matter of acceptance was already addressed in the contract. As the court recognized, Colo. Rev. Stat. § 4-1-102(3) permits contracting parties to alter the effects of UCC provisions. However, there is nothing in the parties' contract that touches on, much less preempts, the operation of § 4-2-606 on our facts. Simply because the contract specified one means of acceptance does not bar application of the acceptance-by-conduct principle controlling here. See, e.g., Pease, 668 P.2d at 975, 976-77 (assessing factual circumstances for application of § 4-2-606 although purchase agreement already contained acceptance provision conditioning approval upon inspection of goods).

Once again, we affirm the district court's determination that RMMI has established its right to the disputed milestone payment. Because we have upheld RMMI's entitlement to full payment pursuant to the parties' contract, properly supplemented by applicable UCC law, we need not reach the separate question of substantial performance.

**Attorney Fees**

Section 12.2 of the parties' agreement provides that in the event of any dispute over breach, "[t]he non-prevailing party shall be liable for costs and

reasonable attorneys fees incurred by the prevailing party." App. at 268. Pursuant to this provision, RMMI has requested, without objection from PSSI, that we remand the case to enable the district court to augment its existing award under section 12.2 with an amount representing the additional fees and costs incurred on this appeal. We grant that request.

Accordingly, the judgment of the United States District Court for the District of Colorado is AFFIRMED, and the cause is REMANDED for an award of appellate fees and costs consistent with the parties' contractual stipulation.

Entered for the Court

Bobby R. Baldock
Circuit Judge