239 So.2d 264 (1970)
GREEN SPRINGS, INC., Gerald J. Green and Herschel V. Green, D/B/a Green Construction Company, a Partnership, Petitioners,
v.
Jacinto CALVERA, As Administrator of the Estate of Hilda A. Calvera, Deceased, and Jacinto Calvera, Individually and Hilda Calvera, His Wife, Respondents.
No. 38605.
Supreme Court of Florida.
September 16, 1970.
Robert L. Bell, of Dixon, Bradford, Williams, McKay & Kimbrell, Miami, for petitioners.
Mallory H. Horton, of Horton & Schwartz and Wall, Roth & Sheradsky, Miami, for respondents.
MANN, District Court Judge.
The Third District Court of Appeal upheld a complaint charging negligence against the developer who sold a house and the contractor who built it, after a heavy concrete planter fell on a child staying there and killed her. Petitioner alleges that this decision conflicts with Slavin v. Kay, Fla. 1959, 108 So.2d 462, and Mai Kai, Inc. v. Colucci, Fla. 1967, 205 So.2d 291. This is not so. There was a deficiency of proof *265 there that the owner was chargeable with knowledge of the dangerous condition. Such a deficiency may develop in this case, but there is no deficiency of allegation: we are considering the pleadings.
The District Court states that "one who owns real property which is being developed by the construction of homes for resale has a nondelegable duty to see that the residence is so constructed as to be reasonably free from dangerous latent defects which will cause harm to those who foreseeably will come onto the property after the construction has been completed and the property resold." 220 So.2d at 416. This should not be taken as imposing liability without fault, which is negated by Slavin and Mai Kai. Rather is it to be taken as a reaffirmation of the doctrine of those cases, extending liability for negligence to cases in which the property has been sold.
One statement in the District Court opinion does, however, create an erroneous impression. The Court states, 220 So.2d at 416, that the "complaint also stated a cause of action against the appellees on the theory that the planter was an attractive nuisance," citing Butler v. Porter-Russell Corporation, Fla. 1968, 217 So.2d 298. That case involved injury to a trespassing child resulting from the fall of a concrete block at a building site. Much of the argument on this petition centers around the question whether possession of the premises is a necessary element in a case based on attractive nuisance. This seems to us to be a misdirected argument. This court has held that a subcontractor may so negligently conduct itself in the insecure placement of a heavy window frame that its fall upon a trespassing child may give rise to liability. Carter v. Livesay Window Co., Fla. 1954, 73 So.2d 411. There are circumstances in which the foreseeability of trespass and the foreseeability of harm so coincide as to impose upon a reasonable man a duty to take care to prevent that injury.
But all of this misses the point: the child killed in this case was not a trespasser, so there is no need to search for a doctrine separate from the rules of ordinary negligence law to support a duty of care toward her. Her presence at this home, in which she was invited to stay for several weeks, was as predictable as McPherson's behind the wheel of his Buick. Slavin and Mai Kai discuss all the doctrine needed to proceed in this case, and one has only to read our Standard Jury Instructions 3.2.d and 3.5.h to perceive how inapposite they would be when the time comes to charge a jury in this case.
Perhaps the phrase "attractive nuisance" has become an unattractive nuisance. There never was a time when a nuisance, in the old equity sense, was required in an "attractive nuisance" case. And the idea of attraction has led sound courts, including this one,[1] into nearly evenly split decisions which may distract lawyers from the fundamentals on which the duty of care toward one's fellow man depends. The difficulty is that judges must formulate doctrine to describe principle, and in doing so are led by the slipperiness of words to coin phrases which seem at the moment to encapsulate the principle beyond question. But lawyers and judges then begin to follow the words, and eventually they may lead us astray from the underlying principle. Obviously we are dealing with such a broadly grounded principle as that expressed in the leading case of Heaven v. Pender, 1883, 11 Q.B.D. 503:
"Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to *266 use ordinary care and skill to avoid such danger."[2]
Equally obviously, we must instruct juries in somewhat more definite language, related to the specific circumstances of the case, and it is this necessity which compels us to draw lines along a continuum purporting to mark differences in kind where there are in reality only differences in degree. But the jury is a great buffer, and places, to our general satisfaction, the particular case on the appropriate side of the line of doctrinal demarcation. What we are dealing with when we speak of "attractive nuisance" is merely a set of circumstances relating to the innocence of danger on a child's part, the likelihood of trespass and consequent danger and the foreseeability of this chain of circumstance on the part of one who would not owe as great a duty of care toward an adult trespasser. All of these factors are to be considered in the light of the utility of maintaining the dangerous condition and the cost of eliminating the danger. All of these may combine to impose upon the landowner or possessor or, as in Carter v. Livesay Window Company, the person responsible for the dangerous condition of the land, a duty of care. All of this specification of principle is adequately covered by Restatement, Torts 2d, § 339, and by a voluminous literature.[3] It is best not to consider whether the specifics of all this legal doctrine, which divide courts, are understood by juries: somehow we boil it down into acceptable instructions and they determine cases acceptably. Judge Jerome Frank quotes Judge Curtis Bok as saying that juries are "treated like children while the testimony is going on," but are then "doused with a kettleful of law, during the charge, that would make a third-year law student blanch."[4] We would unjustly compound the difficulties of the jury which may ultimately decide these issues if we did not order the reference to attractive nuisance expunged.
Accordingly, so much of the opinion of the District Court as refers to a cause of action for attractive nuisance is quashed; all else is approved.
ERVIN, C.J., and DREW and ADKINS, JJ., concur.
CARLTON and BOYD, JJ., agree to conclusion.
NOTES
[1] Concrete Construction, Inc., of Lake Worth v. Petterson, Fla. 1968, 216 So.2d 221.
[2] This statement is misquoted in Carter v. Livesay Window Co., Fla. 1954, 73 So.2d 411. There the phrase is printed: "* * * every one of ordinary sense who did not think. * * *"
[3] E.g., James, Tort Liability of Owners of Land: Duties Owed to Trespassers, 63 Yale L.J. 144 (1953); cf. James, Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees, 63 Yale L.J. 605 (1954); Prosser, Trespassing Children, 47 Cal.L.Rev. 427 (1959); Note, The Liability of Land-owners to Trespassing Children, 1 U.Fla. L.Rev. 271 (1948); Comment, Torts: The Attractive Nuisance Doctrine, 16 U.Fla.L.Rev. 640 (1964); Note, Trespassing Children: A Study in Expanding Liability, 20 Vand.L.Rev. 139 (1966).
[4] Courts on Trial at 117 (1949).