555 P.2d 197 (1976)
Louis LINDAUER and Edna Lindauer, Plaintiffs-Appellees,
v.
LDB DRAINLAYING, INC., a Colorado Corporation, Defendant-Appellant.
No. 75-361.
Colorado Court of Appeals, Div. I.
September 23, 1976.
*198 Bradley, Campbell & Carney, Daniel T. Moyle, Jr., Golden, for plaintiffs-appellees.
Sheldon, Bayer, McLean & Glasman, J. Fern Black, Denver, for defendant-appellant.
Selected for Official Publication.
SILVERSTEIN, Chief Judge.
Plaintiffs, the Lindauers, brought this negligence action against defendant, LDB Drainlaying, to recover damages suffered as a result of injury sustained by their thoroughbred racehorse, Moon Gal. On special interrogatories, the jury found no contributory negligence on the part of the owners, and that defendant was negligent and solely responsible for the horse's injuries. The jury awarded plaintiffs damages in the sum of $8400. Defendant appeals the judgment entered on the verdict, on the grounds that plaintiffs failed to prove negligence, that plaintiffs were contributorily negligent as a matter of law, and that the measure of damages was erroneous. We affirm as to liability and modify as to damages.
At the time of the injury, the plaintiffs were keeping Moon Gal in a fenced pasture leased from one McGee. The injury occurred when Moon Gal became stuck next to a manhole in a muddy trench on the property. Although no one saw the incident, the evidence was undisputed that the horse had fallen in the trench and was injured by the fall and her attempts to escape therefrom.
For three months before the accident, defendant had been on the property to lay a pipeline. Although not working for the owner of the property or for the plaintiffs, the defendant had permission to work there. The evidence is conflicting as to the instructions given by plaintiffs to the defendant at the outset of its work. Plaintiffs testified they told defendant's agent that the work could be done on the property only if LDB fenced the construction areas, but the agent did not recall having been so advised. Defendant performed its work as follows: A section of trench was dug, pipe laid, manhole set, dirt refilled, tamped, sprayed, and allowed to settle and then retamped. Several manholes were installed on the property. Although the first stages of the construction were fenced, no fence was installed in the area around the manhole where the accident occurred. Further, the evidence reveals that the refilling and tamping procedure had not been completed in that area despite defendant's having vacated the property, since large piles of dirt were left next to the trenches and defendant re-entered the property after the accident to refill and tamp.
NEGLIGENCE.
Appellant's argument that the plaintiffs failed to prove a prima facie case of negligence is without merit.
Negligence has been defined as "[t]he failure to observe for the protection of the interests of another person that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury." Colorado *199 Springs & Interurban Ry. Co. v. Allen, 55 Colo. 391, 135 P. 790; Roessler v. O'Brien, 119 Colo. 222, 201 P.2d 901. Plaintiffs introduced sufficient evidence of such negligence to submit the question to the jury. Patterson v. Becker, 122 Colo. 258, 222 P.2d 780; Eisenhart v. Loveland Skiing Corp., 33 Colo.App. 120, 517 P.2d 466.
Appellant has cited authority law for the proposition that a contractor doing work upon land for the owner or occupier thereof is liable for only such harm as is caused while he remains in charge and control of the structure or condition under construction. From that premise, LDB argues that it had no duty here because it was off the premises at the time of the injury.
However, there was conflicting evidence as to whether the project was completed, and this conflict was resolved against LDB. Nor can LDB nullify its duty of care by physically leaving an unfinished project for two months.
More significantly, however, LDB's contention that no duty existed is erroneous because this is not a "contractor" situation. LDB was not doing work upon the premises for the owner or occupier. See Restatement of Torts §§ 330 and 396. The appellant had permission to install the pipeline and thus was a mere licensee. Restatement of Torts § 386; McFarland v. Comm. Boiler Works, 10 Wash.2d 81, 116 P.2d 288.
This distinction is important because the principle which protects a contractor who has completed a project rests on the policy that, after the owner accepts the work, it is the owner's and not the contractor's responsibility for maintaining and using the property in its defective condition. See Hale v. DePaoli, 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 183; Restatement of Torts § 384. This policy is not applicable here. A person rightfully entering upon the premises of another is liable for injuries caused by his acts in rendering the premises unsafe and dangerous and negligently leaving them in that condition. Arkansas Power & Light Co. v. Thompson, 196 Ark. 1012, 120 S.W.2d 709. See Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P.2d 308.
Here there is evidence that LDB left an unfenced incompleted construction project in a pasture where LDB knew horses were kept. The injured horse was found mired in the trench which LDB had excavated. The evidence, although circumstantial, would support a jury conclusion that crusted snow had drifted over the ditch and that the horse wandered into the area and fell into the hole. See Cleary Petroleum, Inc. v. Copenhaver, 476 P.2d 327, 51 A.L.R.3d 299 (Okl.1970). Negligence may be established by facts and circumstances surrounding an accident rather than by direct evidence. Richardson v. Pioneer Const. Co., 164 Colo. 270, 434 P.2d 403. Thus the trial court properly found that plaintiffs had established a prima facie case of negligence.

CONTRIBUTORY NEGLIGENCE.
The trial court correctly left determination of the issue of contributory negligence to the jury. It is only where the facts are undisputed and reasonable minds could draw but one inference from them that the court may rule on the issue as a matter of law. Fowler Real Estate Co. v. Ranke, 181 Colo. 115, 507 P.2d 854; Eisenhart v. Loveland Skiing Corp., supra.
MEASURE OF DAMAGES.
Defendant argues that the measure of damages should be the difference in the fair market value of the horse before and after the accident and reasonable medical expenses incurred. It claims that by including care and feeding expenses during Moon Gal's convalescence, the trial court allowed the plaintiffs to recover more than they were damaged since plaintiffs would have had to pay for care and feeding had the accident not occurred.
The plaintiffs do not deny that these are "ordinary" expenses but claim that they were properly included as an element of damages because they, like medical expenses, *200 were essential for the preservation of the horse in mitigation of plaintiffs' damages and were specially pleaded.
If it had been shown that the care and feeding was in some way unusual because of the accident, for example, if Moon Gal had required special feeding during convalescence, then the expense would have been properly considered as an element of damages by the jury. See Powell v. Hill, 152 S.W. 1125 (Tex.Civ.App.1913); McAleavy v. Lowe, 259 Wis. 463, 49 N.W.2d 487. However, where, as here, it appears that the stable costs and feeding were the same as they would have been for an uninjured horse, the plaintiffs should not have been allowed to recover these items. Rather, the fundamental principle to be applied is "to restore the injured party, as nearly as possible, to the position he would have been in it had it not been for the wrong of the other party." United States v. Hatahley, 257 F.2d 920, 79 A.L.R.2d 668 (10th Cir.).
The jury awarded a lump sum of $8400 without designation of the elements of damages. In the absence of specific allotments, "We are bound to presume that the jury followed the instruction of the court," Greeley, Salt Lake & Pac. RR. Co. v. Yount, 7 Colo.App. 189, 42 P. 1023, therefore including as part of the award, an amount for ordinary care and feeding.
The evidence is undisputed that the cost of the normal care of feed and stabling at Centennial Race Track following the injury was $6.00 a day for 158 days, or $948, and at JNS Stable was $4.00 a day for 30 days or $120.00. The total of $1068 was thus improperly included in the verdict.
Therefore the judgment is reduced to $7332, and as so modified is affirmed. Interest shall be payable from the date the judgment was entered in the trial court. The parties shall pay their own costs on appeal.
COYTE and VanCISE, JJ., concur.