Ted L. SINGLETON and Eunice N. Singleton, Appellants,

v.

CHARLEBOIS CONSTRUCTION CO., a Missouri Corporation and Caudle Material & Supply Co., a Missouri Corporation, Respondents.

No. WD 35978.

Missouri Court of Appeals, Western District.

May 7, 1985.

Mallory V. Mayse, Tull and Mayse, Columbia, for appellants.

Douglas L. Van Camp, J. Kent Lowry, Hendren and Andrae, Jefferson City, for respondent Caudle Material and Supply, Inc.

Edwin J. Carlton, Oliver, Walker, Carlton and Wilson, Columbia, for respondent Charlebois Const. Co.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

This case involves a tort action for personal injuries to plaintiff/appellant Ted Singleton and his wife's consortium claim. On a Saturday afternoon, April 15th, Ted and his wife decided to look around a house under construction in contemplation of purchasing it. The new home in Columbia, Missouri was being built by respondent Charlebois Construction Co. (Charlebois). The partially finished home had a "For Sale" sign in the front yard. The sign simply gave the real estate company's name and phone number. Ted had seen the sign in the yard of this site some two weeks earlier. The house had no front door or garage door, nor any barricades, so Ted and his wife proceeded inside through the garage opening without calling the real estate office or asking anyone's permisison. No one else was present. Singleton testified there were times when prospective purchasers would go on the property where new homes were being constructed by Charlebois in this sub-division when no one, including workers was present. At the time of the accident the house was "roughed in"—the next step was to hang the sheetrock.

While inspecting the dining room, Ted attempted to look for the possibility of a second heat register behind a stack of 20 sheets of sheetrock which had been delivered and stacked vertically on edge against the south wall by the respondent Caudle

Material & Supply, Co. (Caudle), a supplier to Charlebois. As he tried to peer over the stack and look down between the studs of the unfinished wall, the stack, weighing about a ton, toppled over against Ted, pinning him underneath and causing an open, dislocated fracture of his right ankle. In May of the same year Singleton and his wife bought a new home in the same subdivision from Charlebois.

At the close of plaintiffs' evidence, the trial court directed verdicts for both Charlebois and Caudle, finding that as a matter of law the Singletons were not business invitees since the "For Sale" sign did not invite people to go in without further permission.

The court will first address the points on appeal as they relate to Charlebois, the undisputed owner of the property. As to this defendant the issue is the determination of the status of Singleton—if he was an invitee, the court was in error, if he was a licensee or trespasser the ruling was correct. At the stage of a directed verdict after plaintiff's case, the matter of Singleton's fault or negligence was and is not an issue.

■ The Singletons' first contend that their status as business invitees was a question for the jury and not proper for a directed verdict. However, the evidence which went to the establishment of their status was not disputed. The only dispute was over the application of law to the fact a "For Sale" sign was placed in the yard of a house under construction. As the court held in *Friend v. Gem International*, 476 S.W.2d 134, 140 (Mo.App.1971), "a determination of the status of plaintiff at the time of [his] injury was for the court to determine." This point is denied.

■ The main question presented is whether the trial court erred in finding as a matter of law that the Singletons were not business invitees. Implicit in the court's judgment is, that as a matter of law Singleton was at most a licensee or perhaps tres-

passer. *Hanks v. Riffe Construction Company*, 232 Kan. 800, 658 P.2d 1030, 1032 (banc 1983). In reviewing a directed verdict at the close of plaintiff's case this court must consider the evidence and all reasonable inferences therefrom in the light most favorable to the Singletons in order to determine whether they made a submissible case. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 765 (Mo. banc 1984); *Jackson v. Radtke*, 673 S.W.2d 40, 44–45 (Mo. App.1984). It is further noted this opinion only covers the matter of the status of the plaintiff's relative to the standards of duty and care owed them and whether as a matter of law the directed verdict entered was correct. Missouri courts have held that the Restatement (Second) of Torts accurately states the applicable Missouri law in the area of invitees. *Gilpin v. Gerbes Supermarket*, 446 S.W.2d 615, 618 (Mo. banc 1969). Section 332(3) defines a business invitee as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Generally, if the entry was for some real benefit to the possessor the entrant is an invitee; if with express or implied consent, but for the entrant's own purposes, he is a licensee; and if entry without consent or privilege by the possessor the entrant is a trespasser. *Cunningham v. Hayes*, 463 S.W.2d 555, 558 (Mo.App.1971). Stated generally the duty owed these persons is as follows: an invitee is owed the duty of ordinary care by the owner to keep the premises reasonably safe, *Gilpin, supra*, 446 S.W.2d at 618; Restatement (Second) of Torts § 343. As to conditions on the land the possessor owes a licensee a duty to exercise reasonable care as to a dangerous condition known to the possessor and not likely to be discovered by the licensee. *Wells v. Goforth*, 443 S.W.2d 155, 158 (Mo. banc 1969); *Davis v. Jackson*, 604 S.W.2d 610, 612 (Mo.App.1980). A trespasser, whose presence is not anticipated, is not owed a duty by the possessor to put the land in a reasonably safe condition, *McVi-*

car v. *W.R. Arthur & Co.*, 312 S.W.2d 805, 812 (Mo.1958), but along with other exceptions, once the presence becomes known, the significance of the status of invitee, licensee or trespasser disappears and a uniform duty of reasonable care is owed. *Cunningham, supra*, 463 S.W.2d at 559.

Charlebois' brief does not contest the second prong of the test, *i.e.* whether there is a mutual economic benefit. It is clear the Singletons did indeed benefit Charlebois by their visit since they purchased a new house in that subdivision. The critical determination is whether the "For Sale" sign containing only the name of a real estate company and telephone number constituted an invitation.

■ The Missouri Supreme Court held in *Gilliland v. Bondurant*, 59 S.W.2d 679, 686 (Mo.1933), that it makes no difference in the owner's duty to the invitee whether the invitation is express or implied. The court quoting 45 C.J. 810 § 220 said an invitation may be implied from dedication, customary use, or enticement, allurement, inducement to enter or manifested by the arrangement of the premises or the conduct of the owner. *Accord: Happy v. Walz*, 213 S.W.2d 410, 415 (Mo.1948); *Crown Cork and Seal Company v. Kane*, 213 Md. 152, 131 A.2d 470, 473 (App.1957). In Restatement (Second) of Torts § 332 comment b., it defines invitation as "conduct which justifies others in believing that the possessor desires them to enter ... Any words or *conduct* of the possessor which lead or *encourage* the *visitor to believe* that his entry is desired *may be sufficient for the invitation.*" (Emphasis added.)

In this case the president of Charlebois testified that from time to time houses under construction would have "for sale" signs in the front yard, and that he had observed families take a closer inspection of these houses. There was no evidence that these other families had made an appointment with the real estate company.

However, the president of Charlebois would escort them through the house.

Similarly Charlebois' construction superintendent testified it was a regular practice in the summertime for people to walk onto house projects to look at them. He would never tell them to leave; instead he would show them around and sometimes take their name and perhaps furnish that to his employer. Also, Ted Singleton testified that it was a pretty common occurrence to see families look at houses under construction both when workers were present, and when no one else was there.

■ As the Restatement (Second) of Torts explains in comment c of § 332, the test for whether certain conduct constitutes an invitation is not what the possessor of land *intended*, but what a *reasonable man would interpret* the conduct to mean. The situation here is distinguishable from the cases cited by the trial court. In *Wilkie v. Randolph Trust Co.*, 55 N.E.2d 466 (Mass.1944) and in *Mortgage Commission Servicing Corporation v. Brock*, 60 Ga.App. 695, 4 S.E.2d 669 (Ga. App.1939), the property for sale was fully constructed and locked. In that situation a reasonable man would not interpret a "For Sale" sign as an invitation to break and enter.

■ But in the present case, and under the scope of review determined by the grant of a directed verdict, a reasonable man could interpret, from the pattern of practice established by Charlebois, that an official appointment was not required to inspect the premises under construction. No barricades had been erected, nor even a simple "keep out" sign had been posted. Singleton had seen other families do exactly what he did without any complaint from Charlebois. Since an economic benefit was present, as well as an implied invitation, the trial court erred in finding as a matter of law that the Singletons were not business invitees for they made a submissible case. There was sufficient evidence to

denominate Ted Singleton as an invitee, a person induced to come onto the property for the business benefit of the possessor. W. Prosser, Law of Torts, § 58 (4th Ed. 1981). This court's holding has no bearing on Charlebois' *liability*; it simply means the Singletons established their status as business invitees; the question of negligence is one for the jury.

The directed verdict for Caudle will now be addressed. The scope of review is the same as was applicable the other defendant, Charlebois. As a subcontractor for building supplies, it's liability, if any, would be governed by Restatement (Second) of Torts §§ 384 and 385. Section 384 reads as follows:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition *while the work is in his charge.* (Emphasis added.)

Section 385 reads as follows:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition *after his work has been accepted* by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others. (Emphasis added.)

Caudle had delivered the sheetrock five days before Singleton was injured. The sheetrock was placed throughout the entire house and was stacked on its edge in a near vertical position, this method being normal and usual practice in the construction industry. The record indicates Charlebois accepted delivery of the sheetrock as evidenced by the subsequent, albeit brief, site inspection by Charlebois' superintendent. The sheetrock was to be hung in place by an entity other than Caudle. There was no evidence or inference Caudle was to do anything other than deliver the material. The facts here are almost identical to a case decided by the Arkansas Supreme Court. In *DeVazier v. Whit Davis Lumber Company*, 257 Ark. 371, 516 S.W.2d 610, 613 (1974), the court held that the construction company which ordered the sheetrock, was in complete possession and control of it at the time of the injury inasmuch as there was at least a "practical acceptance" by the construction company. The court concluded "any liability of the lumber company had ceased and had shifted to the construction company." *Id.* The facts in *DeVazier* involved a 13 year old girl, who with her mother was being shown a new home for purchase. A vertically stacked quantity of sheetrock delivered to the premises by a supplier fell on her leg and ankle. The owner had seen the sheetrock three or four times since it had been delivered and stacked 5 days previously.

As Restatement (Second) of Torts § 384 comment g points out, liability does not attach for harm caused after control of the condition is terminated. After completion of the work by a contractor and acceptance by the owner, the contractor is not liable for tortious conduct to third persons, but it is the owner's responsibility for maintaining a defective condition. *Forbes v. Romo*, 123 Ariz. 548, 601 P.2d 311, 134 (Ariz.App.1979); *Lindauer v. LDB Drainlaying, Inc.*, 38 Colo.App. 266, 555 P.2d 197, 199 (1976); *Florida Freight Terminals, Inc. v. Cabanas*, 354 So.2d 1222, 1225 (Fla.App.1978). The *DeVazier* court, as well as the ones just mentioned, make no mention of § 385. Several states have specifically noted § 385 and the liability placed on the contractor as that of a manufacturer to the ultimate consumers of his product. *McKinley v. Fanning*, 100 Idaho 189, 595 P.2d 1084 (1979); *Hiatt v. Brown*, 422

N.E.2d 736 (Ind.App.1981); *Johnson v. Equipment Specialists, Inc.*, 58 Ill.App.3d 133, 15 Ill.Dec. 491, 373 N.E.2d 837, 842 (1978). Under that standard the element of foreseeability must come into play to hold Caudle in the case. In other words could Caudle, under these facts, reasonably foresee the stacking would result in a harm to Singleton? *See also Chubb Group of Ins. v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766, 774–75 (Mo.App.1983). As a matter of law, the answer to that question is in the negative. Caudle, as a supplier, could not have reasonably anticipated Singleton coming on the property and "using" the sheetrock as he did. *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362, 366 (Mo.1969). The trial court was correct in directing a verdict for respondent Caudle.

The judgment is affirmed as to Caudle Material & Supply Company. The judgment as to Charlebois Construction is reversed with that cause being remanded for trial.

All concur.