No. 88-57

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

RICHARD HARRINGTON,
            Plaintiff and Appellant,
        -vs-

LaBELLE'S OF COLORADO, INC., d/b/a
LaBELLE'S CATALOG SHOWROOMS, a Colorado
corp., and DAVID HEINE, d/b/a BILLINGS
SWEEPING SERVICE,
            Defendants and Respondents.

LaBELLE'S OF COLORADO, INC., d/b/a
LaBELLE'S CATALOG SHOWROOMS, a Colorado
corp.,
            Third-Party Plaintiff and Appellant,
        -vs-

BILLINGS SWEEPING SERVICE,
            Third-Party Defendant.


APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:
        For Appellant:
                Datsopoulos, MacDonald & Lind; Ronald B. MacDonald,
                Missoula, Montana   (Harrington)
                Herndon, Harper & Munro; Rodney T. Hartman, Billings,
                Montana (LaBelle's)
        For Respondent:
                Anderson, Brown, Gerbase, Cebull, Fulton, Harman &
                Ross; Steven J. Harman, Billings, Montana


Submitted on Briefs:   Aug. 4, 1988
    Decided:   December 6, 1988

FILED '88 DEC 6 PM 4 07
MONTANA SUPREME COURT

Filed:

_Earl M. Harris_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Richard Harrington and third-party plaintiff LaBelle's appeal from a summary judgment granted in favor of Billings Sweeping Service (the Service) in the District Court for the Thirteenth Judicial District, Yellowstone County, Montana. We affirm.

The issues are:

1. Did the District Court err in granting summary judgment in favor of the Service on the issue of negligence based on the rule of contractor nonliability?

2. Did the District Court err in granting summary judgment in favor of the Service on the issue of strict products liability under § 402A, Restatement 2d of Torts?

3. Was the dismissal of LaBelle's third-party complaint proper?

This action arises out of a bicycle accident which occurred in the parking lot of LaBelle's in Billings on July 21, 1984. Richard Harrington was riding his bicycle through the lot at approximately 9:00 p.m. when he struck a speed bump, was thrown from the bike, and suffered severe head injuries. Harrington sued LaBelle's alleging that the speed bumps were improperly designed, negligently maintained, and inadequately marked to warn of their inherent latent danger. LaBelle's filed a third-party complaint against the contractor who had installed the bumps, alleging that the contractor was solely responsible for the design, construction and installation of the speed bumps. The third-party complaint did not allege the parties had contracted for painting the speed bumps. LaBelle's sought contribution or indemnity in the event that it was found to

be liable. Harrington then filed an amended complaint to include the contractor, Billings Sweeping Service, seeking recovery on theories of negligence and strict products liability. On motion, the District Court granted summary judgment to the Service and dismissed LaBelle's third-party complaint.

As to the negligence claim, the District Court found the Service not liable based upon the rule of contractor nonliability also known as the "Accepted Work Rule Doctrine," which has been adopted by this Court. Also, no cause of action would lie under the products liability claim since the court found speed bumps are not a "product" for purposes of § 402A, Restatement 2d of Torts. Mr. Harrington and LaBelle's appeal from this order.

I

Did the District Court err in granting summary judgment in favor of the Service on the issue of negligence based on the accepted work rule doctrine?

Montana has adopted the rule that an independent contractor will not be liable to third-parties for injuries which occur after the contractor has completed the work and the work has been turned over to and accepted by the employer. The accepted work rule doctrine was first recognized in Montana in Ulmen v. Schwieger (1932), 92 Mont. 331, 12 P.2d 856. The rule is based on the lack of any duty owing by the contractor to the injured third-party at the time of the injury. Instead, the person employing the contractor is substituted as the responsible party. The accepted work rule doctrine established in Ulmen has been upheld and applied in related Montana cases since then. See Olson v. Kayser (1973), 161 Mont. 241, 505 P.2d 394; Hannifin v.

Cahill-Mooney Construction (1972), 159 Mont. 413, 498 P.2d 1214.

On appeal Mr. Harrington asks this Court to reconsider the rule. He argues that the facts and equity of this case compel us to revise the long-standing rule of Ulmen or to carve out exceptions to that rule. He contends that Ulmen does not represent the modern view and cites cases from jurisdictions which have extended contractor liability to foreseeable injury caused by negligent construction. This is not the rule in Montana, however, and we decline to depart from the line of cases which have established otherwise. In doing so, we direct our attention to the "facts" and "equity" of this case.

LaBelle's is located at a busy intersection in Billings. To avoid the traffic signal at that intersection, traffic frequently cuts across LaBelle's parking lot between 24th and Central. To slow and discourage this traffic, LaBelle's manager contracted with Billings Sweeping Service to install two speed bumps in the parking lot. The record conflicts as to who solicited whom, but a work order was processed on May 3, 1984, and construction was completed on or about that date.

The bumps were made of asphalt, the same material as the parking lot, and were not marked or painted in any way so as to distinguish them from the parking lot's smooth surface. There is disagreement in the depositions about who was responsible for the design and placement of the bumps and why the speed bumps did not get striped, painted, or otherwise marked.

Despite the conflict in facts surrounding the speed bump construction, there is no doubt that the Service had turned

4

over, and LaBelle's had accepted, the contracted work. Upon completion, LaBelle's paid the Service for the job, and the Service completely removed itself from the premises prior to the accident, which occurred approximately 70 days thereafter. There is no evidence that LaBelle's requested any follow-up work or made any complaints to the Service prior to the accident. These facts substantiate the District Court's findings that the Service had turned over and LaBelle's had accepted the work on the speed bumps, so as to satisfy the accepted work rule doctrine.

Regarding Mr. Harrington's plea in equity, we note that he has settled with LaBelle's for $125,000. We find little merit in his argument that he will be left "without recovery" unless this Court revises or finds exceptions to the accepted work rule doctrine as established in Ulmen. For these reasons, we hold that the District Court did not err in granting summary judgment to the Service on the issue of negligence.

II

Did the District Court err in granting summary judgment in favor of the Service on the issue of strict products liability under § 402A, Restatement 2d of Torts?

Mr. Harrington contends that the Service should be held strictly liable as the manufacturer of a defective and unreasonably dangerous product. He argues that a speed bump should be recognized as a "product" for purposes of § 402A Restatement 2d of Torts.

To date, there are no Montana cases which discuss the meaning of "product" for a strict products liability case. In refusing to recognize a speed bump as a product, the District Court relied on policy considerations set forth in

the case in which Montana adopted the doctrine of strict liability. See Brandenburger v. Toyota Motor Sales (1973), 162 Mont. 506, 513 P.2d 268. In that case, this Court said:

> Inherent in these policy considerations is not the nature of the transaction . . . but the character of the defect itself . . . and the unavailability of an adequate remedy on behalf of the injured plaintiff.

Brandenburger, 513 P.2d at 273 (quoting Escola v. Coca Cola Bottling Company of Fresno (Cal. 1944), 150 P.2d 436).

Based on our review of these policy considerations, we agree with the District Court that a speed bump is not a "product" for purposes of § 402A strict liability. A major goal of the doctrine was to afford the plaintiff a remedy in the face of an extremely complicated manufacturing industry, where the inability of the plaintiff to pinpoint a negligent act or a negligent party could preclude recovery altogether. As was pointed out by the District Court, there is no problem of a remote manufacturer or the inability to trace a specific negligent act in this case. Our determination in no way affects Mr. Harrington's existing settlement agreement with LaBelle's, so he is not left without adequate remedy. We hold that the District Court did not err in granting summary judgment on the issue of strict products liability.

### III

Was the dismissal of LaBelle's third-party complaint proper?

Montana law does not allow a claim for contribution or indemnity to be asserted by a defendant against a co-defendant who is not liable to the plaintiff. Section 27-1-703, MCA. See State ex rel. Deere and Company v. District Court (Mont. 1986), 730 P.2d 396, 400, 43 St.Rep. 2270,

6

2274. Since we have affirmed the District Court's granting of summary judgment in favor of the Service, it follows that LaBelle's claim for contribution or indemnity must fail. We conclude that the District Court properly dismissed LaBelle's claim. We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

7

Mr. Justice Fred J. Weber dissents as follows:

The majority relies upon a longstanding legal doctrine to bar recovery from Billings Sweeping Service without justifying its application to this particular case or to modern theories of liability in general. While it is generally appropriate to follow the rulings of past decisions, I believe that this Court should examine the reasoning behind the rule of contractor nonliability before applying it to this case.

Historically, the "accepted work doctrine" has been justified on several grounds. These include: (1) a lack of contractual privity between a building or construction contractor and injured third parties; (2) that there would be no end to a contractor's litigation unless liability ceased after the work was accepted; (3) the true proximate cause of a third party's injury is the owner's negligence in maintaining the property; and (4) public policy confines liability for negligent construction of a complicated structure to the owner or contractee. 58 Annot., A.L.R.2d 869, 870 (1958). These justifications are incorporated into Montana law in the case of Ulmen v. Schwieger (1932), 92 Mont. 331, 12 P.2d 856, which is cited by the majority as support for its holding that a contractor may not be held liable to an injured third party. I question whether these are adequate grounds for the majority's holding in light of our general rules of negligence in Montana.

Other jurisdictions have held that the principles supporting the rule of contractor nonliability do not mesh with modern theories of negligence. The leading case in which the District of Columbia Circuit refuted these justifications for contractor nonliability is Hanna v. Fletcher (D.C.Cir. 1956), 231 F.2d 469. The court reasoned that the antiquated

8

justifications based on lack of privity had no place in modern theories of liability as set forth in MacPherson v. Buick Motor Co. (1916), 217 N.Y. 382, 111 N.E. 1050. In MacPherson, the question was whether an automobile manufacturer could be held liable to a consumer for injuries resulting from a sudden collapse of the car due to defective wood used in one of its wheels. Judge Cardozo responded that:

> If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully.

111 N.E. at 1053.

In Hanna v. Fletcher, the court considered a claim for personal injury by a plaintiff who sued a construction contractor for negligent repair of a stair railing on an existing building. Several years after the repair work was completed and paid for, the railing collapsed during use and caused the plaintiff to fall into the stairwell, which resulted in serious injuries. The court concluded there was no reason to differentiate between the manufacturer of goods and a building contractor "for in each case negligent conduct often may be expected to result in injury to one reasonably foreseen as a possible user." Hanna, 231 F.2d at 474. The court applied Judge Cardozo's analysis and held the construction contractor liable for his negligent repair of the railing.

This Court has followed MacPherson and allowed recovery for negligence asserted against the manufacturers of automobiles [see Rix v. General Motors Corp. (Mont. 1986), 723 P.2d

9

195, 43 St.Rep. 1296] and manufacturers of farm machinery [see Brown v. North American Manufacturing Co. (1978), 176 Mont. 98, 576 P.2d 711]. We concluded in those cases that it was no longer appropriate to bar recovery on theories such as those identified in connection with the accepted work doctrine, that is a lack of contractual privity, or that there would be excessive litigation, or similar theories. Given our rules of liability in cases where negligent construction by a manufacturer may cause injury, I see no reason why we should not extend that reasoning to apply to negligent construction by a contractor. Certainly the potential for injury due to negligent construction by a contractor is just as great as with the negligent manufacturing of a consumer good. I conclude that this Court should have reviewed the reasoning upon which the denial of liability is founded. While the facts presently before us may indicate a rather weak claim on the part of Mr. Harrington with regard to the proving of elements of negligence against Billings Sweeping Service, there is a proper legal theory which should allow him to continue with his cause of action.

I recognize there may be limitations which should be placed upon a theory of recovery against a building contractor. But an absolute bar to liability is not appropriate. The majority has failed to explain why a contractor should not be responsible for its own negligence. For this reason, I believe that this Court should have evaluated what I see as an outmoded concept to redefine our rules of liability in a case such as this. Thus, liability would more appropriately be predicated on the presence or absence of negligence on the part of the various parties involved, including the construction contractor.

Justice

I concur in the foregoing dissent.

Justice

10