**Pamela LYNCH and Rick Lynch,**
**Appellants (Plaintiffs),**

v.

**NORTON CONSTRUCTION, INC., a**
**Wyoming corporation, Appellee**
**(Defendant).**

No. 92–285.

Supreme Court of Wyoming.

Oct. 25, 1993.

H. Steven Brown of Brown & Raymond, P.C., Casper, for appellants.

Patrick J. Murphy and Scott E. Ortiz, Casper, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Pamela and Rick Lynch (the Lynches) appeal the district court's grant of summary judgment to Norton Construction, Inc. (Norton) on the Lynches' claim of negligence. The district court found Norton owed no legal duty to the Lynches and was entitled to judgment as a matter of law.

We decline to adopt the accepted work doctrine urged by Norton, which would extinguish a contractor's liability to third persons upon the owner's acceptance of the contractor's work. We hold instead that a contractor does owe a duty of reasonable care to foreseeable users, even after an owner's acceptance of the contractor's work, and traditional negligence principles apply to questions of contractor liability. We affirm the district court's judgment, however, on the ground that no genuine issue of material fact exists with respect to the question of proximate cause, and Norton is entitled to judgment as a matter of law.

### ISSUES

The Lynches present the following issue for our review:

Did the district court correctly grant summary judgment to a contractor in a negligent construction case in ruling the contractor had no duty to a user of the sidewalk?

### FACTS

In the spring of 1988, the Stocktrail Elementary School in Gillette, Wyoming, added four annex buildings to accommodate additional students for the 1988–1989 school year. In early August, 1988, the school district determined it would need to install sidewalks between the main building and the annex buildings to provide easier pedestrian access to the buildings.

On August 9, 1988, the school district requested bids on the project from four local contractors. At the bid meeting, the school district presented each contractor with one page of plans and specifications for the sidewalk. The specification sheet included requirements that the sidewalk have a strength of 4,000 pounds per square inch; that six-inch by six-inch wire mesh be imbedded in the concrete for reinforcement; that expansion joints be installed in the concrete to help prevent cracking; and that the contractor remove the existing grass sod before pouring the concrete. The plans included no provisions for drain-

age, and the contractors were instructed to follow the natural slope of the terrain.

On August 10, 1988, the school district awarded the bid to Norton, who submitted the low bid for the project. Norton completed the project by the August 22, 1988 deadline; and at that time representatives of the school district accepted the work, informing Norton they were pleased with his workmanship and that his work complied with the school district's plans and specifications.

As designed and constructed, the sidewalk provided no drainage for the run-off from the natural sloping of the terrain. As a result, beginning in the first winter following the sidewalk's construction, an ice problem developed on the sidewalk. Water would accumulate on the sidewalk and freeze there, creating hazardous walking conditions.

On January 23, 1990, while working as a custodian at the Stocktrail Elementary School, Pamela Lynch slipped and fell on an icy spot on a sidewalk at the school. She injured her left arm leading to nerve damage called Reflex Sympathy Dystrophy Syndrome. Pamela Lynch's injuries have rendered her totally and permanently disabled, and she is unable to work.

For over a year after the school district accepted Norton's work, school personnel, including Pamela Lynch, knew of the ice problem on the sidewalk. Pamela Lynch's duties included shoveling the sidewalks and spreading salt and sand over the icy spots. At the school district's direction, to conserve materials, Pamela Lynch did not spread salt and sand over icy spots for her own safety; she was instructed to use the salt and sand only when children were on the premises. Several school employees, including Pamela Lynch, had slipped and fallen on the ice at the spot where Pamela Lynch fell again on January 23, 1990.

Having received several complaints about the icy condition of the sidewalk, the school principal had, nearly one year before Pamela Lynch's accident, submitted a work order to the school district maintenance department. The work order requested in-

stallation of a drainage system to allow water to drain appropriately instead of flowing over the sidewalks and freezing. The drainage system was not installed until eight months *after* Pamela Lynch's accident. Neither the school district nor school personnel from Stocktrail Elementary ever notified Norton of the drainage problem.

On December 30, 1991, Pamela Lynch filed a complaint against Norton, the contractor who built the sidewalk. Her complaint alleged that Norton's negligence in failing to provide drainage for the sidewalk caused her fall and subsequent disability. On September 10, 1992, Norton moved for summary judgment contending he owed no duty to the Lynches, and following a hearing on October 16, 1992, the district court granted Norton's motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper when no genuine issues of material fact exist, and the prevailing party is entitled to judgment as a matter of law. *Brown v. Avery,* 850 P.2d 612, 614–15 (Wyo.1993). When reviewing the propriety of a grant of summary judgment, we review the record in the light most favorable to the party opposing the motion, giving that party all favorable inferences that can be drawn from the facts. *Miller v. Campbell County,* 854 P.2d 71, 75 (Wyo.1993); *Abell v. Dewey,* 847 P.2d 36, 39 (Wyo.1993). "Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden." *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987). "If no issue of material fact is found to exist, summary judgment is appropriate, even in a negligence case." *Brown,* 850 P.2d at 614.

## DISCUSSION

### 1. The Accepted Work Doctrine

Several jurisdictions have adopted the accepted work doctrine, applying it in cases where a contractor has completed a project, the owner has accepted the contractor's work, and a third party has subsequently been injured by the condition of the work done. *See e.g., Forbes v. Romo,* 123 Ariz. 548, 601 P.2d 311, 314 (1979); *Hale v. Depaoli,* 33 Cal.2d 228, 201 P.2d 1, 2 (1948); *Lindauer v. LDB Drainlaying,* 38 Colo. App. 266, 555 P.2d 197, 199 (1976); *Easterday v. Masiello,* 518 So.2d 260, 261 (Fla. 1988); *Pennington v. Cecil N. Brown Co.,* 187 Ga.App. 621, 371 S.E.2d 106, 107 (1988); *Harrington v. LaBelle's of Colorado,* 235 Mont. 80, 765 P.2d 732, 733 (1988); *Singleton v. Charlebois Constr. Co.,* 690 S.W.2d 845, 849 (Mo.App.1985); *McKinstry v. Cass County,* 228 Neb. 733, 424 N.W.2d 322, 328–29 (1988). The rule relieves an independent contractor of liability for injuries to third parties after the contractor has completed his work, and the owner or employer has accepted the work, regardless of the contractor's negligence in completing the project. *Pennington,* 371 S.E.2d at 107; *McKinstry,* 424 N.W.2d at 328–29. Jurisdictions which have adopted the accepted work doctrine have reasoned that it would be unfair to continue to hold the contractor responsible for defects after the owner has accepted the improvement and undertaken its maintenance and repair. *See Easterday,* 518 So.2d at 261.

Varying exceptions to the doctrine's rule of nonliability have developed in the jurisdictions which have adopted the rule. These exceptions impose liability where the defect is latent, where the contractor had practiced fraud or deceit or had deliberately concealed the defects of his work, where the contractor has created a nuisance, or where the product of the contractor's work could be regarded as inherently or imminently dangerous. C.T. Drechsler, Annotation, *Negligence of Building or Construction Contractor as Ground of Liability Upon His Part for Injury or Damage to Third Persons Occurring After Completion and Acceptance of the Work,* 58 A.L.R.2d 865, 870 (1958).

Norton cites *Reiman Constr. Co. v. Jerry Hiller Co.,* 709 P.2d 1271 (Wyo.1985) and *Miller v. Rissler & McMurry Co.,* 794 P.2d 91 (Wyo.1990) to support his position that Wyoming has adopted the accepted work doctrine. However, neither *Reiman*

nor *Rissler* established the accepted work doctrine in Wyoming. In both cases this court considered a contractor's duty with regard to project design, plans and specifications. In *Rissler,* we reiterated our conclusion from *Reiman* that

> neither the usual practices of the construction industry, nor his contract, placed any design responsibilities on the contractor. However, we also noted that he did have a duty to exercise skill and care in his selection of materials and in the performance of his work. Accordingly, we held that a contractor could not be held liable for damages caused by defects in the plans and specifications for his job if he completed the job in a workmanlike manner and in substantial compliance with those plans and specifications.

*Rissler,* 794 P.2d at 94–95. In *Reiman* and *Rissler,* the contractors had completed their work, and the work had been accepted by the owner of the premises. We nonetheless outlined a contractor's duty to exercise skill and care in his selection of materials and in the performance of his work, and his duty to complete the job in a workmanlike manner, in substantial compliance with the owner's plans and specifications. Thus, our decisions in those cases imply a contractor's duty in its various aspects survives after his work has been completed and accepted. We are presented, then, with the question whether we should change that rule and replace it with the accepted work doctrine.

Proponents of the doctrine suggest it provides a simpler, more workable approach to determining contractor liability. However, we agree with the Texas Supreme Court's response to such assertions:

> The retention of the "accepted work" doctrine would inevitably yield the same unwieldy results as have come about in virtually every other jurisdiction that has formally adhered to the rule. The rule eventually becomes enveloped by complex exceptions to cover such situations as nuisance, hidden danger, and inherently dangerous conditions. The result would be that in each case, after having

first decided that there was an acceptance of the work, we would then have to decide issues involving all the various exceptions to the rule and in case any exception were found applicable, the basic issues of negligence and proximate cause would still remain for consideration. We believe that outright rejection of this oft-repudiated and emasculated doctrine would restore both logic and simplicity to the law.

*Strakos v. Gehring,* 360 S.W.2d 787, 791 (Tex.1962).

In rejecting the accepted work doctrine, the Texas Supreme Court commented that it did not favor an imposition of absolute liability on contractors, but simply rejected the notion that

> although a contractor is found to have performed negligent work or left premises in an unsafe condition and such action or negligence is found to be a proximate cause of injury, he must nevertheless be held immune from liability solely because his work has been completed and accepted in an unsafe condition.

*Strakos,* 360 S.W.2d at 790. We agree with the Texas Supreme Court that

> [i]t is difficult to see why a failure to use ordinary care to protect [foreseeable users of the improvement] * * * would be terminated by an agreement between the contracting parties. Why should a distinction be made between an injury occurring the day before the acceptance of the contractor's work by the [owner] (considering liability to exist at that time) and an injury occurring the day after the work was contractually accepted?

*Strakos,* 360 S.W.2d at 790. Other jurisdictions have similarly rejected the accepted work doctrine. *See e.g., Hanna v. Fletcher,* 231 F.2d 469, 58 A.L.R.2d 847 (D.C.Cir. 1956), *cert. denied sub nom. Gichner Iron Works, Inc. v. Hanna,* 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501; *Russell v. Arthur Whitcomb, Inc.,* 100 N.H. 171, 121 A.2d 781 (1956); *Tipton v. Clower,* 67 N.M. 388, 356 P.2d 46 (1960).

The accepted work doctrine, without the benefit of the many exceptions which have

evolved since the doctrine originated, would absolve a contractor of liability in just this fashion. The jurisdictions which have adhered to the doctrine have alleviated its harsh results by modifying the rule through the adoption of numerous exceptions. In fact, the trend has been to rely more on the exceptions than on the general rule. In the course of this trend, the general rule of nonliability has been nearly swallowed up by the exceptions to the rule, and the rule of nonliability has served essentially as a mere preface to the various exceptions. *See* Drechsler *supra* at 871; and W. PAGE KEETON ET AL., *PROSSER & KEETON ON THE LAW OF TORTS* § 104A, at 723 (5th ed. 1984).

■ We find no justification for a blanket policy of nonliability for contractors whose work has been accepted. Furthermore, the rule of nonliability with its many exceptions is more cumbersome than traditional negligence analysis, while leading us to the same conclusion in most cases. For these reasons we decline Norton's invitation to adopt the accepted work doctrine. We turn then to application of traditional negligence principles in this case.

## 2. Application of Negligence Principles

■ It is universally quoted:

The elements of a cause of action for negligence include: (1) a duty owed to the plaintiff; (2) a breach, or violation of that duty; (3) which is the proximate cause of (4) plaintiff's injuries.

*Century Ready–Mix v. Campbell County Sch. Dist.,* 816 P.2d 795, 802 (Wyo.1991); *MacKrell v. Bell H$_2$S Safety,* 795 P.2d 776, 779 (Wyo.1990). Proximate cause requires that the accident or injury be the natural and probable consequence of the act of negligence and is normally a question of fact unless the evidence is such that reasonable minds could not disagree. *Century Ready–Mix,* 816 P.2d at 802; *Stephenson v. Pacific Power & Light Co.,* 779 P.2d 1169, 1178 (Wyo.1989). An intervening cause, if not reasonably foreseeable, will relieve a defendant of liability. *Stephenson,* 779 P.2d at 1178. We have defined an intervening cause as

one that comes into being after a defendant's negligent act has occurred * * *. [The intervening cause] is reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby.

*Century Ready–Mix,* 816 P.2d at 802 (quoting *Buckley v. Bell,* 703 P.2d 1089, 1092 (Wyo.1985)).

■ We have already concluded that Norton, as a contractor, owed a duty of reasonable care to foreseeable users of the sidewalk. For purposes of our analysis, we will assume that Norton breached that duty, in that he did not complete the project in a workmanlike manner. We are willing to assume this, for purposes of argument only, because it does not affect the outcome of the case; we find the element of proximate cause missing. We note, though, that the conclusory affidavit submitted by the Lynches' expert witness was insufficient to raise a question of fact regarding Norton's negligence. We remind counsel that the bare conclusory statements of an expert, alleging the existence and violation of a duty, with no reasonable basis therefor, are insufficient to prevent a summary judgment. *Rissler,* 794 P.2d at 95; *Thomas by Thomas v. South Cheyenne Water Sewer Dist.,* 702 P.2d 1303, 1307 (Wyo.1985). The affidavit of plaintiffs' expert witness in this case contained nothing more than his bare assertions that Norton was negligent, and would, therefore, have been insufficient to prevent a summary judgment.

We affirm the grant of summary judgment in this case because no genuine question of fact exists with respect to the question of proximate cause. While proximate cause is usually a question of fact, reserved for the trier of fact's determination, we conclude that reasonable minds could not have differed in this instance. *Century Ready–Mix,* 816 P.2d at 802. The school district's negligence in failing to repair the obviously dangerous condition of the sidewalk, after receiving several complaints about the condition, constituted an

intervening cause, relieving Norton of liability for his negligence, if he was negligent.

Norton could not reasonably have foreseen that the school district, when confronted with a dangerously icy sidewalk, due to a drainage problem, would not inform Norton of the obvious defect, would not repair the defect itself, and would instruct its employees not to use salt and sand on the icy spots for their own safety.

We conclude that if Norton was negligent, his negligence was the remote, not the proximate, cause of Pamela Lynch's injuries. Other jurisdictions have similarly held that if the owner of the improved premises discovers the danger, or it is obvious to him, his responsibility supersedes that of the contractor, and it is the owner's failure to perform his duty to repair that is the proximate cause of the injury. *El Shorafa v. Ruprecht*, 345 So.2d 763, 764 (Fla. App.1977); *Tipton*, 356 P.2d at 49; *Leininger v. Stearns–Roger Mfg. Co.*, 17 Utah 2d 37, 404 P.2d 33, 37 (1965).

### 3. Strict Liability

In their appellate brief the Lynches urge this court to apply § 402A of the RESTATEMENT (SECOND) TORTS to questions of contractor liability. However, the Lynches did not plead strict liability in their original complaint, nor did they amend their complaint to plead strict liability. The Lynches, therefore, abandoned their claim of strict liability, and we will not address the issue.

### CONCLUSION

We hold that a contractor owes a duty to complete his work with skill and care and in a workmanlike manner, and that duty extends to third persons both before and after the owner has accepted the contractor's work. The trial court's order granting summary judgment in favor of Norton is affirmed, as no genuine issue of material fact exists, and Norton is entitled to judgment as a matter of law.

CARDINE, Justice, specially concurring, with whom THOMAS, Justice, joins.

The contractor in this case, Norton Construction, Inc., constructed the sidewalk precisely in accordance with the design, plan and orders of the school district as required by his contract with the district. The issue here presented, as I see it, is:

Is there a duty to third persons that requires a contractor to breach his contract by constructing the project contrary to an owner's design, plans and specifications or, in the alternative, refusing to construct the project at all?

I would hold such a duty does not rest with the contractor. If there was negligence in the design, or in the failure to correct a dangerous condition, or failure to salt and sand the ice, it was the negligence of the owner and not the contractor.

THOMAS, Justice, specially concurring.

I agree with the conclusion articulated in the majority opinion to affirm the summary judgment in favor of Norton Construction, Inc. I also am in accord with the declination to adopt the accepted work doctrine as that concept is urged by Norton. I find, however, that my focus is much like that of Justice Cardine in his concurring opinion, in which I join, and I would ground the decision to affirm this case not upon a conclusion no genuine issue of material fact exists with respect to the question of proximate causation, but upon the ground that, in this instance, Norton owed no duty to the Lynches.

Our rule, which we have adhered to steadfastly, is that the question of whether a duty exists on the part of any alleged tortfeasor is a question of law assigned to the court for determination. Alternatively, our general rule is that a question of fact such as proximate causation is assigned to the jury, i.e., the finder of fact, for its determination. This distinction is significant in this case because disputes regarding questions of fact do not ordinarily lend themselves to summary judgment while, on the contrary, questions of law are ripe for summary judgment as being outside the purview of jury deliberation. *See, e.g., Hill*

*v. Park County By and Through Bd. of County Comm'rs,* 856 P.2d 456 (Wyo. 1993); *Bowen v. Smith,* 838 P.2d 186 (Wyo. 1992); *Hozian v. Weathermon,* 821 P.2d 1297 (Wyo.1991); *Allmaras v. Mudge,* 820 P.2d 533 (Wyo.1991).

Our approach is consistent with that articulated in 6 James W. Moore et al., Moore's Federal Practice ¶ 56.17[42] (1988), where it is stated:

> Issues of negligence, including such related issues as wanton or contributory negligence, are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner.

In *Parker v. Haller,* 751 P.2d 372 (Wyo. 1988), we said summary judgment is not ordinarily applicable to issues of negligence and is a drastic remedy that deprives a litigant of the right to trial. In negligence cases, it is preferable for a summary judgment to be grounded upon a question of law as a matter within the ambit of the court to decide. In this particular instance, the question of law is whether a duty was owed by Norton to the Lynches.

An examination of persuasive authority from other jurisdictions teaches me other courts have concluded that liability on the part of either the owner or the contractor is a question of law to be resolved by determination as to which party had the actual present duty to protect the injured third party. In *Slavin v. Kay,* 108 So.2d 462, 466 (Fla.1958), the court stated in support of a general rule of nonliability for the contractor:

> There must be a present duty on the part of an alleged tortfeasor toward one claiming liability, and that there could be no such "present duty" if the premises were in the possession and control of another at the time of the injury.

*Slavin* still is good law in Florida. *See, e.g., Ed Ricke & Sons, Inc. v. Green,* 609 So.2d 504 (Fla.1992); *Easterday v. Masiello,* 518 So.2d 260 (Fla.1988); *Edward M. Chadbourne, Inc. v. Vaughn,* 491 So.2d 551 (Fla.1986); *Lubell v. Roman Spa, Inc.,* 362 So.2d 922 (Fla.1978); *Green Springs, Inc. v. Calvera,* 239 So.2d 264 (Fla.1970);

*Mai Kai Inc. v. Colucci,* 205 So.2d 291 (Fla.1967); *U.S. Lodging v. H.B. Daniel Constr.,* 617 So.2d 448 (Fla.Dist.Ct.App. 1993); *Fitzgerald v. Cestari,* 553 So.2d 708 (Fla.Dist.Ct.App.1989); *Kala Investments, Inc. v. Sklar,* 538 So.2d 909 (Fla.Dist.Ct. App.1989), *review denied,* 551 So.2d 461 (Fla.1989); *Seitz v. Zac Smith & Co., Inc.,* 500 So.2d 706 (Fla.Dist.Ct.App.1987); *Jackson v. L.A.W. Contracting Corp.,* 481 So.2d 1290 (Fla.Dist.Ct.App.), *review denied,* 492 So.2d 1333 (Fla.1986); *Birch v. Capeletti Bros., Inc.,* 478 So.2d 454 (Fla. Dist.Ct.App.1985); *Mori v. Industr. Leasing Corp.,* 468 So.2d 1066 (Fla.Dist.Ct.App. 1985); *Neumann v. Davis Water & Waste, Inc.,* 433 So.2d 559 (Fla.Dist.Ct.App.), *review denied,* 441 So.2d 632 (Fla.1983); *Conley v. Coral Ridge Properties, Inc.,* 396 So.2d 1220 (Fla.Dist.Ct.App.1981); *El Shorafa v. Ruprecht,* 345 So.2d 763 (Fla. Dist.Ct.App.1977).

Another example is found in *Schlender v. Andy Jansen Co.,* 380 P.2d 523, 526 (Okl.1962), where the rule of nonliability for contractors prevails, and the court noted that the contractor's duty and liability terminates when:

> The work * * * has been accepted by the proprietor * * * but the responsibility, if any, for maintaining or using it in its defective condition is shifted to the proprietor. The contractor remains liable, if at all, only to the proprietor for breach of his contract.

In New Mexico, we find a case in which the New Mexico Supreme Court refused to adopt a *per se* rule of contractor nonliability, stating:

> Generally, an independent contractor may be liable to third parties who may have been foreseeably endangered by the contractor's negligence, even after the owner has accepted the work * * * subject to two limitations:
>
> 1) The independent contractor should not be liable if he merely carefully carried out the plans, specifications and directions given him, at least where the plans are not so obviously

dangerous that no reasonable man would follow them, and

2) If the owner discovers the danger, or it is obvious to him, his responsibility may supersede that of the contractor.

*Terry v. New Mexico State Highway Comm'n,* 98 N.M. 119, 645 P.2d 1375, 1379 (1982) (citations omitted).

Of similar tenor are the following cases: *Kennecott Copper Corp. v. McDowell,* 100 Ariz. 276, 413 P.2d 749 (1966); *Trushcheff v. Abell–Howe Co.,* 239 N.W.2d 116 (Iowa 1976); *Bd. of Educ. of City of Clifton v. W.R. Grace Corp.,* 258 N.J.Super. 94, 609 A.2d 92 (1992); *Cumming v. Nielson's, Inc.,* 108 N.M. 198, 769 P.2d 732 (1988); *Baker v. Fryar,* 77 N.M. 257, 421 P.2d 784 (1966); *DeArman v. Popps,* 75 N.M. 39, 400 P.2d 215 (1965); *Southern California Petroleum Corp. v. Royal Indem. Co.,* 70 N.M. 24, 369 P.2d 407 (1962); *Tipton v. Clower,* 67 N.M. 388, 356 P.2d 46 (1960); *Jackson v. City of Franklin,* 51 Ohio App.3d 51, 554 N.E.2d 932 (1988); *Leininger v. Stearns–Roger Mfg. Co.,* 17 Utah 2d 37, 404 P.2d 33 (1965).

My examination of these cases persuades me to agree with the majority opinion that a contractor does owe a duty of reasonable care to foreseeable users, even after the owner has accepted the work, and traditional negligence principles can be applied to the questions of contractor liability. I would, however, like the New Mexico court, limit the potential liability of the contractor to those situations in which the plans are so obviously dangerous no reasonable man would follow them and those situations in which there was an apparent danger. I do choose, however, to resolve this case upon the premise that, under the circumstances, there was no longer a duty owed to Mrs. Lynch by Norton, rather than upon the concept of proximate cause.

My decision to affirm is premised upon the proposition a contractor like Norton owes no duty to third persons, as a matter of law, if that contractor in good faith constructed the project according to the owner's plans and specifications, and no danger or defect from following those plans and specifications was obvious to the contractor. Traditional negligence principles do not justify a finding of duty on the part of the contractor if there is no foreseeability of harm to third parties. The fact that, at some later time, the danger or defect becomes obvious to the owner upon subsequent discovery, while the premises are in the control of the owner, would assign to the owner the duty to avoid injury.

In this instance, there is nothing to suggest that Norton could foresee the school district, the owner, for more than a year would fail to protect its employees by refusing to salt the accumulations of ice and snow or to sand the known icy spots. Nothing indicates the contractor was forewarned by any information concerning any drainage problem that would relate to the construction of the sidewalk. The legal duty was assigned to the school district, in this instance, and it, having failed to adjust the plans and specifications to avoid the dangerous condition and having failed to remedy those problems when known, was the party responsible to those who might be injured.

I concur in the disposition of the case, but my concurrence is premised upon a lack of duty on the part of the contractor, rather than a conclusion there was no causal relationship between the work performed by the contractor and Mrs. Lynch's injuries.